**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

|  |  |
|---|---|
| GoPro, Inc.,<br><br>                              Plaintiff,<br><br>        v.<br><br>United States,<br><br>                              Defendant. | Court No. 20-00176 |

## <u>JUDGMENT ORDER</u>

Plaintiff having moved for summary judgment pursuant to Rule 56 of the Rules of this Court, and defendant having responded to said motion, it is hereby

Upon consideration of the motions for summary judgment filed by Plaintiff GRK Canada, Ltd., concerning the classification of certain Camera Housings, and all other papers filed in this action, and upon due deliberation, it is hereby

ORDERED that Plaintiff's motion for summary judgment is granted; it is further

ORDERED that Plaintiff is entitled to judgment that the subject merchandise is properly classifiable in subheading 8529.90.8600, HTSUS, at the duty-free rate, it is further

ORDERED that the Defendant reliquidate the entries covered by this action with a refund of all duties overpaid, plus interest, as provided by law.


_____

Timothy M. Reif, Judge


DATED:  New York, NY

        This ___ day of ___ , 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| GoPro, Inc.,<br><br>                        Plaintiff,<br><br>     v.<br><br>United States,<br><br>                    Defendant. | Court No. 20-00176 |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of this Court, Plaintiff hereby moves for summary judgment.  This Motion is supported by the declarations, separate statement of uncontested facts, exhibits, samples of the imported merchandise, as well as the Plaintiff's brief in support.

For the reasons set out therein, Plaintiff submits that the merchandise which is the subject of this action is properly classified under subheading  8529.90.1960 of the Harmonized Tariff Schedule of the United States ("HTSUS"), duty free.

WHEREFORE, Plaintiff asks that judgment be granted in its favor; and that the appropriate official of U.S. Customs and Border Protection be directed to reliquidate the entries subject to this action, classifying the action camera housings under subheading 8529.90.1960, HTSUS, and to refund to Plaintiff the excess duties collected, together with interest, as provided by law.

Dated:      August 1, 2022           Respectfully submitted,

                                      */s/ Alena A. Eckhardt*
                                      Alena A. Eckhardt
                                      Matt Nakachi
                                      JUNKER & NAKACHI, P.C.
                                      50 California Street, Suite 1500
                                      San Francisco, CA 94111
                                      (415) 498-0070
                                      alena@tradelawcounsel.com
                                      *Counsel for Plaintiff, GoPro, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 5, 2022, she served a copy of the **PLAINTIFF GOPRO, INC.'S MOTION FOR SUMMARY JUDGMENT, DECLARATION OF COUNSEL, EXHIBITS AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** upon the Defendant United States, via the U.S. Court of International Trade's CM/ECF System:

Edward F. Kenny
Senior Trial Counsel
U.S. Department of Justice
Commercial Litigation Branch
Int'l Trade Field Office
26 Federal Plaza, Room 346
New York, NY 10278

Physical samples of the imported merchandise and demonstrative exhibits were previously provided to the Defendant United States at the address listed above.

*/s/ Alena A. Eckhardt*
Alena A. Eckhardt

TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

SUBJECT MERCHANDISE ................................................................................. 2

THE TARIFF PROVISIONS AT ISSUE ............................................................ 3

THE QUESTION PRESENTED FOR DECISION ............................................ 4

SUMMARY OF THE ARGUMENT .................................................................... 4

ARGUMENT ........................................................................................................... 6

I.      The Court Has Subject Matter Jurisdiction ............................................... 6

II.     The Legal Standard ....................................................................................... 7

III.    The Camera Housings Are Not Classifiable in Heading 4202, HTSUS ........... 8

        A.      Heading 4202, HTSUS, and Its Requirements ..................................... 8

        B.      The Camera Housings are Not Classifiable *Eo Nomine* as "Camera
                Cases" in Heading 4202, HTSUS ......................................................... 9

                1.      "Camera Housings" Are Not "Camera Cases," as Either Term is
                        Commonly and Commercially Understood ............................... 10

                        a)      Lexicographic Sources ................................................ 10

                        b)      Denomination of the Trade .......................................... 12

                        c)      Earlier Decisions by the CBP ...................................... 13

                        d)      Congressional Intent .................................................... 14

                2.      The Camera Housings Do Not Possess the Essential
                        Characteristics Uniting the Listed Exemplars in Heading 4202 16

                        a)      The Camera Housings Do Not "Store" Items ............. 17

                        b)      The Camera Housings Do Not "Organize" Multiple
                                Items .............................................................................. 21

                        c)      The Camera Housings Do Not "Carry" Items ............. 23

                        d)      The Camera Housings Do Not "Protect" Items in the
                                Same Manner as a Camera Case ................................... 24

3.   The Purpose and Function of the Camera Housings is Inconsistent with the Exemplars of 4202, and Different from a "Camera Case" .................................................................................................... 24

C.   The Camera Housings Are Not Classifiable as "Similar Containers" of Heading 4202 ....................................................................................... 27

IV.   The Subject Merchandise is Properly Classified in Heading 8529 as "Parts" . 27

V.   Alternatively, the Subject Merchandise is Properly Classified in Heading 3926 as "Other Articles of Plastics" .......................................................................... 31

CONCLUSION ......................................................................................................... 31

CERTIFICATE OF COMPLIANCE ………………………..…………………….... 33

# TABLE OF AUTHORITIES

**Cases**

*Aladdin Int'l Corp. v. U.S.*,
13 C.I.T. 1038 (1989) .................................................................14

*Avenue in Leather v. U. S.*, ("Avenue II")
317 F.3d 139 (Fed. Cir. 2003).....................................................17

*Avenue in Leather, Inc. v. U.S. ("Avenue III)*,
423 F.3d 1326 (Fed. Cir. 2005)..............................................17, 27

*Bauerhin Techs. Ltd. Pshp. v. U.S.*,
110 F.3d 774 (Fed. Cir. 1997)................................... 27,28,29,30

*Bausch & Lomb, Inc. v. U.S.*,
148 F.3d 1363 (Fed. Cir. 1998)......................................................8

*Camelbak Products, LLC. v. U.S.*,
649 F.3d 1361 (Fed. Cir. 2011)............................................20,25,26

*Camera Specialty, Inc. et al*. v. U.S.,
37 Cust. Ct. 14 (1956) ..................................................................15

*Carl Zeiss, Inc. v. U.S.*,
195 F.3d 1375 (Fed. Cir. 1999).....................................................8

*Casio, Inc. v. U.S.*,
73 F.3d 1095 (Fed. Cir. 1996).................................................24, 25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................6

*Deckers Corp. v. U.S.*,
752 F.3d 949 (Fed. Cir. 2014)...............................................10, 16

*DRI Industries, Inc. v. U.S.*,
657 F. Supp. 528 (C.I.T. 1987).....................................................14

Gallagher & Ascher Co. v. U.S.,
52 C.C.P.A. 11 (1964) ................................................................28

*GRK Canada, Ltd. v. U.S.*,
761 F.3d 1354 (Fed. Cir. 2014)...........................................*passim*

*Jarvis Clark Co. v. U. S.*,

733 F.2d 873 (Fed. Cir. 1984); ...................................................................................8

*Len-Ron Manufacturing Co. v. U.S.*,
334 F.3d 1304 (Fed. Cir. 2003)...............................................................16, 17, 20

*Link Snacks, Inc. v. U.S.*, 7
2 F. 3d 962 (Fed. Cir. 2014).....................................................................................6

*Nidec v. U.S.*,
68 F.3d 1333 (Fed. Cir. 1995).................................................................................9

*Otter Products, LLC v. U.S.*, ("Otter Products CAFC")
834 F.3d 1369 (Fed. Cir. 2016)......................................................................passim

*Photonetics, Inc. v. U.S.*,
659 F. Supp. 2d 1317 (C.I.T. 2009) .........................................................................9

*R.T. Foods, Inc. v. U.S.*,
757 F.3d 1349 (2014)..............................................................................................25

*Rollerblade, Inc. v. U.S.*,
282 F.3d 1349 (Fed. Cir. 2002)..............................................................................29

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)..................................................................................................7

*Sony Electronics, Inc.*,
37 C.I.T. 1748 (2013) .........................................................................................6, 7

*Totes, Inc. v. U.S.*,
69 F.3d 495 (Fed. Cir.1995)....................................................................................16

*U.S. v. Mead Corp.*,
533 U.S. 218 (2001)..................................................................................................7

*U.S. v. Pompeo*,
43 C.C.P.A. 9 (1955) .......................................................................................passim

*U.S. v. Willoughby Camera Stores, Inc.*,
21 C.C.P.A. 322 (1933) ...................................................................................passim

*Warner-Lambert Co. v. U.S.*,
407 F.3d 1207 .............................................................................................................7

**Statutes & Regulations**

19 U.S.C. § 1515 ........................................................................................ 6

28 U.S.C. § 1581(a) ................................................................................... 6

28 U.S.C. § 2640(a)(1) .............................................................................. 6

28 U.S.C. § 2673(a) ................................................................................... 6

28 U.S.C. § 2640(a) ............................................................................... 6, 8

Harmonized Tariff Schedule of the United States

U.S. Note 1 to Chapter 42 ................................................................. 14, 17

U.S. Note 2(h) to Chapter 48 ................................................................. 14

Heading 4202 ................................................................................... passim

Heading 8529 ................................................................................... passim

Heading 3926 ................................................................................... passim

Tariff Schedules of the United States

TSUS 706.62.45 ...................................................................................... 15

**Other Authorities**

USCIT Rule 56(c) ..................................................................................... 6

*Focal Encyclopedia of Photography* (3rd Edition 1993), at pp. 90-91 ...... 10, 11, 12, 16

*Oxford Dictionary (online version)* ........................................................ 15

USITC Publication 2051, (TSUS-HTSUS Correlation Tables) p 294 .................................. 15

**Rulings**

HQ H287090 ............................................................................................. 7

NY N0447863 ........................................................................................... 13

NY N208448 ............................................................................................. 13

NY N237453 ............................................................................................. 17

## TABLE OF EXHIBITS TO COUNSEL DECLARATION

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Physical Samples 1-11 |
| B | Product Booklet |
| C | Marketing Materials |
| D | Defendant's Responses to First Set of Interrogatories |
| E | Deposition of Matthew D. Thomas |
| F | Deposition of Edward Russell |
| G | Deposition of Scot Briggs |
| H | Deposition of Suzanne Kingsbury |
| I | May 3, 2013 Ruling NY N240464 |
| J | May 22, 2017 Request for Reconsideration |
| K | July 5, 2018 Proposed Revocation of Classification Rulings) |
| L | May 8, 2019 Withdrawal of Proposed Revocation) |
| M | May 13, 2019 Final Ruling HQ H287090) |
| N | Declaration of Expert Edward Russell |
| O | Deposition of Expert Edward Russell |
| P | Excerpts from Focal Encyclopedia of Photography |
| Q | Excerpt from Oxford Dictionary (online version) |

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| GoPro, Inc.,<br><br>                              Plaintiff,<br><br>        v.<br><br>United States,<br><br>                              Defendant. | Court No. 20-00176 |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff, GoPro, Inc. (hereinafter "Plaintiff" or "GoPro"), respectfully moves this Court for summary judgment, pursuant to Rule 56 of the Rules of this Court and submits the following memorandum of law in support thereof.

<u>**INTRODUCTION**</u>

This test case involves the tariff classification of camera housings (collectively, "Camera Housings") that are designed for use with the GoPro's line of HERO 3, HERO 3+, HERO 4 and HERO 5 Black action cameras. **Plaintiff's Statement of Uncontested Material Facts ("SUMF") 8**.

Based in San Mateo, California, GoPro is a pioneering technology company, which designs and manufactures the innovative digital camera systems known as "action cameras" for hands-free video recording of extreme activities, such as surfing, deep-water diving, motorcycling skydiving, skateboarding, off-roading, *etc*. from perspectives never before possible and in a way that traditional cameras or phone cameras cannot. **SUMF 9, 10**.

To accomplish action camera footage, the GoPro HERO action camera is designed within a comprehensive system that includes digital cameras, camera housings, and numerous types of specialized mounts. **SUMF 11**. The waterproof and ruggedized housing encloses the

action camera and enables the consumer to mount the camera onto themselves or onto equipment, and then to operate the camera while engaged in an extreme activity.  **SUMF 12**. The earlier models of the GoPro HERO action camera are not durable, waterproof, or mountable by itself.  **SUMF 14**.  The Camera Housings are therefore functionally indispensable to the operation of the GoPro camera during hands-free video recording in different extreme environments – the *raison d'être* of the action camera.  **SUMF 13**.

Relentlessly innovative, GoPro has been granted many U.S. patents for its camera housings and mounting assemblies.  GoPro has over 500 employees in the United States.

<u>**SUBJECT MERCHANDISE**</u>

The imported merchandise at issue are the Camera Housings for the GoPro HERO action cameras imported by GoPro from October 2018 to February 2019.  **SUMF 8(a)-(f),** Comp. Ex. A1-A5 (physical samples).[1]  The Camera Housings are made out of a polycarbonate (**SUMF 18**), bespoke to a single electronic device (the HERO action camera) (**SUMF 16**), and most incorporate the following functional features:

*Waterproof*:  The housing is waterproof up to 40 or 60 meters below the surface of the water; the camera itself is not waterproof and unable to operate underwater without the housing.  **SUMF 8, 14, 27**.

*Spring-loaded function buttons*:  The housing incorporates spring-loaded buttons which allow for the operation of all action camera controls.  If not for the springs, the buttons could be activated when underwater at compression depths.  The spring-loaded buttons mate to the corresponding buttons on the camera within.  **SUMF 20.**

*Functional heat sink*:  The aluminum heat sink of housing is designed to draw heat away from the camera within during filming.  This protects the camera from damage due to overheating.  The heat sink of the housing mates to a similar aluminum heat exchange rink located around the lens of the action camera.  **SUMF 25.**

*Flat optical glass assembly*: The flat optical glass assembly is treated with coatings which impart anti-fog, anti-glare, UV-resistant, and water-repellant features to facilitate action camera videography.  **SUMF 19**.

---

[1] In subsequent generations of HERO action cameras (beginning with the HERO5) GoPro was able to integrate the functionality of the camera housings into the body of its action cameras.  **SUMF 15.**  The physical sample of the subsequent HERO9 action camera, released in 2020, is submitted to the Court as an example of this "integrated" housing.  *Id*.

*Universal two-to-three fingers mounting system with a screw-style closure*: The mounting system at the base of the housing allows camera use with the wide-variety of action camera mounts and accessories.  The camera itself is not capable of being interfacing with the mounts without the housing.  **SUMF 24**.

*Silicon gaskets*:  The gaskets of the housing prevent water seepage and withstands water pressure at depth. **SUMF 28**.

*Foam strip*:  A thin layer of foam is affixed to the inner rear door. This is not a protective padding, but rather ensures a tight fit for the purpose of preventing the rattling of the camera within. **SUMF 21**.

## THE TARIFF PROVISIONS AT ISSUE

U.S. Customs and Border Protection ("CBP") classified the Camera Housings under subheading 4202.99.9000, Harmonized Tariff Schedule of the United States ("HTSUS"):

4202    Trunks, suitcases, vanity cases, attaché cases, briefcases, school satchels, spectacle cases, binocular cases, **camera cases**,  musical instrument cases, gun cases, holsters and **similar containers**; traveling bags, insulated food or beverage bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder boxes, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper:

\* \* \*

4202.99    Other:

Of materials (other than leather, composition leather, sheeting of plastics, textile materials, vulcanized fiber or paperboard) wholly or mainly covered with paper:

\* \* \*

**4202.99.9000**    Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20% *ad valorem*

HTSUS 4202.99.0000 (2018, 2019) (emphasis added).

GoPro contends that the classification of the Camera Housings in subheading 4202.99.9000, HTSUS, is incorrect, and the products instead should be classified under heading 8525, within subheading 8529.90.86, HTSUS:

8529    Parts suitable for use solely or principally with the apparatus of headings 8524 to 8528:

\* \* \*

3

8529.90        Other:

\*   \*   \*   \*

**8529.90.86**                Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . free

HTSUS 8529.90.86 (2018, 2019) (emphasis added).

Alternatively, the subject merchandise should be classified in subheading
3926.90.9980:

3926        Other articles of plastics and articles of other materials of headings 3901 to 3914:

\*   \*   \*

3926.90        Other:

\*   \*   \*

**3926.90.99**                Other . . . . . . . . . . . . . . . . . . . . . . . .. 5.3% *ad valorem*

HTSUS 3926.90.9980 (2018-2019) (emphasis added).

### THE QUESTION PRESENTED FOR DECISION

Whether functional GoPro Camera Housings are classifiable as "camera cases" or
"similar containers" in heading 4202, HTSUS (duty rate of 20 percent *ad valorem)*, or whether
they are properly classifiable as "parts suitable for use solely or principally with digital cameras
of heading 8525" per subheading 8529.90.86, HTSUS (duty free rate).  Alternatively, whether
the Camera Housings may be classifiable as "other articles of plastics", per subheading
3926.90.9990, HTSUS (5.3 percent *ad valorem).*

### SUMMARY OF THE ARGUMENT

The identity of the imported articles at issue in this action is not in dispute.  They are
plastic camera housings designed for exclusive use with the GoPro HERO action cameras.
Physical samples of most of the housings at issue have been submitted to the Court.  No dispute
exists as to what the imported merchandise is, so the issue is whether these Camera Housings
are classifiable in heading 4202, or should be properly classified in heading 8529, and more

4

specifically in subheading 8529.90.86, HTSUS, or, alternatively, in heading 3926, and more specifically in subheading 3926.90.99, HTSUS.

The record evidence, including uncontroverted expert testimony and the undisputed nature of the products at issue, demonstrate that the Camera Housings are neither *eo nomine* "camera cases" nor "other containers" of heading 4202, HTSUS.  Unlike every single exemplar listed in the heading and every type of product that has been classified in the heading through both *eo nomine* and *ejusdem generis* analyses, the Camera Housings do not share the characteristics and the primary purpose which unite the exemplars of heading 4202: the ability to store, organize, carry, and protect.

The Camera Housings are not designed (1) to meet the needs of long-term storage, (2) nor to organize multiple items during storage, nor (3) to carry items, nor (4) to effectively protect for storage.   The Camera Housings are principally a functional design that is intended for a use which is integral to the premise of hand-free action camera footage.  The device is solely used with the GoPro HERO action cameras and provides a functionality which the GoPro HERO action cameras lack on their own.  Furthermore, none of the exemplars listed in heading 4202 functions with, controls, and adds features to an item while that item is in use.

These facts distinguish the Camera Housings from scope of the exemplars listed in the heading 4202, HTSUS.  Accordingly, the products at issue are neither *eo nominee* "camera cases", nor are they "similar containers" within the meaning of the heading, and per GRI 1, they are precluded from classification therein.

Because CBP's classification of the subject merchandise in heading 4202, HTSUS, is improper, the articles instead should be classified in heading 8529, HTSUS, which provides for, *inter alia*, "parts" suitable for use solely or principally with digital cameras of heading 8525.  The camera housing is an integral part of the GoPro action camera.  Heading 8525, HTSUS, includes "digital cameras," which category includes digital cameras with both video

and still image capability, like the HERO action camera. *Sony Electronics*, 37 C.I.T. 1748 (2013). Therefore, articles that are considered "parts" for such a digital camera are properly classified under heading 8529, HTSUS. Alternatively, in heading 3926 as "other articles of plastics."

## ARGUMENT

### I.    The Court Has Subject Matter Jurisdiction

The Court has exclusive jurisdiction over all civil actions commenced under 19 U.S.C. § 1515 to contest protests denied by Customs, 28 U.S.C. § 1581(a), and reviews such actions *de novo*. 28 U.S.C. § 2640(a)(1).  The Court has jurisdiction over this litigation because the subject matter of this case is the properly protested classification decision by CBP which applies to the entire transaction value of the subject entries.  **SUMF 4-5**.  GoPro timely commenced this action within 180 days of the date of denial of the protest against the housings entries entered in 2018 and 2019.  **SUMF 6**. GoPro paid all liquidated duties on the subject entries before commencement of this action in accordance with 28 U.S.C. § 2673(a).  **SUMF 7**.

### II.    The Legal Standard

The court will grant summary judgment when "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  USCIT Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 223 (1986).

A classification decision entails a two-step analysis.  First, the court determines the proper meaning of the specific terms in the tariff provision, a question of law.  *Link Snacks, Inc. v. U.S.*, 72 F. 3d 962, 965 (Fed. Cir. 2014).  Second, the court determines whether the subject merchandise properly falls within the description of such terms, a question of fact.  *Id.*

6

Where no genuine "dispute as to the nature of the merchandise [exists], the two-step classification analysis collapses entirely into a question of law." *Id.* at 965-966.

In resolving such a motion for summary judgment, this Court need <u>not</u> defer to the CBP's final classification determination[2] given that the rulings are only afforded a measure of deference proportional to their power to persuade. *U.S. v. Mead Corp.*, 533 U.S. 218, 234-35 (2001)(citing to *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("*Skidmore*"). More specifically, "the degree of deference depends on the thoroughness evident in the classification ruling; the validity of the reasoning that led to the classification; consistency of the classification with earlier and later pronouncements; the formality with which the particular ruling was established; and other factors that supply a 'power to persuade.'" *Warner-Lambert Co. v. U.S.*, 407 F.3d 1207, 1209 (citing to *Skidmore*, 323 U.S. at 140). And "[a] lack of consistency indicates that Customs has not thoroughly considered a particular classification and undermines the persuasive power of its conclusions." *Sony Electronics, Inc.*, 37 C.I.T. 1748, 1754-1755 (2013).

Here, since the CBP's final classification ruling HQ H287090 (a) does not comport with the body of its own rulings and previous proposed determination, (b) withholds deference to judicial precedents, (c) fails to exercise reasonableness by failing to employ proper *eo nomine* and *ejusdem generis* analyses and disregarding common and commercial meaning of the named exemplar, HQ H287090 is neither persuasive, nor entitled to *Skidmore* deference. This Court "has been tasked by Congress to conduct a *de novo* review, and to determine the

---

[2] Customs administrative rulings were published in, Customs Bulletin and Decisions, Vol. 52, No. 27, July 5, 2018 ("Proposed Revocation of Three Ruling Letters, Proposed Modification of One Ruling Letter, and Revocation of Treatment Relating to the Tariff Classification of Rigid Molded Plastic Waterproof Camera Housing"); and in Customs Bulletin and Decisions, Vol. 53, No. 14, May 8, 2019 ("Withdrawal of Proposed Revocation of Three Ruling Letters, Proposed Modification of One Ruling Letter, and Proposed Revocation of Treatment Relating to the Tariff Classification of Rigid Molded Plastic Waterproof Camera Housing").

correct classification based on the record made before it." *Id*. at 493; *Jarvis Clark Co. v. U. S.*, 733 F.2d 873, 878 (Fed. Cir. 1984); 28 U.S.C. §2640(a).

Summary judgment in a classification action is particularly appropriate where, as here, "there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Bausch & Lomb, Inc. v. U.S.*, 148 F.3d 1363, 1365 (Fed. Cir. 1998).   No dispute exists that the merchandise at issue are camera housings bespoke to a single functional GoPro action camera. The only open issue for the Court is to determine the proper meaning, scope, and interpretation of the relevant tariff provisions. As detailed in this brief and related supporting materials, the CBP's classification of the Camera Housings in heading 4202, HTSUS, is improper, and the articles instead should be classified in heading 8529, or alternatively, in heading 3926.  Accordingly, GoPro is entitled to summary judgment as a matter of law.

## III.   **The Camera Housings Are Not Classifiable in Heading 4202, HTSUS**

The starting point for every classification case is the tariff schedule itself. The Court should begin its inquiry by consulting the HTSUS General Rules of Interpretation ("GRI").[3] *Carl Zeiss, Inc. v. U.S.*, 195 F.3d 1375, 1379 (Fed. Cir. 1999).  Under GRI 1, classification is determined according to the terms of the headings and any relevant section or chapter notes.[4]

### A.   **Heading 4202, HTSUS, and Its Requirements**

Heading 4202, HTSUS, contains both specifically named categories of products as well as residual provisions for "similar containers."  The heading covers two separate categories of goods:

(1)   trunks, suitcases, vanity cases, attaché cases, briefcases, school satchels, spectacle cases, binocular cases, **camera cases**, musical instrument cases, gun cases, holsters and **similar containers**; and

---

[3] The tariff classification of merchandise entering the United States is governed by the GRIs, which are applied in numerical order.  Merchandise is first to be classified under the appropriate four-digit heading; only once the appropriate heading has been established may the subheading be considered.

[4] In the event that the merchandise cannot be classified solely on the basis of GRI 1, and the headings and legal notes do not otherwise require, the remaining GRI 2 through 6 are then applied in order.

(2)    traveling bags, insulated food or beverage bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder boxes, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper.

"The semicolons in HTSUS headings 'create a wall around each grouping of items, preventing the qualifying language from one grouping from applying to another.'" *Photonetics, Inc. v. U.S.*, 659 F. Supp. 2d 1317, 1325, n. 7 (C.I.T. 2009).  It is undisputed that the subject merchandise is not made from the materials listed in the second category (*i.e.*, leather, composition leather, sheeting of plastics, textile materials, vulcanized fiber or paperboard); therefore, the only way it can be classified in heading 4202, HTSUS, is if they were determined to be "camera cases" or "similar containers" to the exemplars listed with the first category.  Therefore, both *eo nominee* and *ejusdem generis* criteria will be applied to determine whether the Camera Housings can be classified in the first section of heading 4202, HTSUS.

The conclusion that the Camera Housings are neither *eo nomine* "camera cases" nor *ejusdem generis* "similar containers" of heading 4202, HTSUS, is supported by the HTSUS headings with accompanying legal notes, the common and commercial meaning of the term "camera cases," as evidenced by the lexicographic sources, uncontradicted expert testimony and legislative history, as well as prior decisions of this Court and previous CBP classification decisions.

**B.    The Camera Housings are Not Classifiable *Eo Nomine* as "Camera Cases" in Heading 4202, HTSUS**

An *eo nominee* provision describes goods according to their specific name, usually well known in commerce.  *Nidec v. U.S.*, 68 F.3d 1333, 1336 (Fed. Cir. 1995).  Absent limiting language or contrary legislative intent, an *eo nominee* term includes all forms of the named article.  *Nidec*, 68 F. 3d at 1336.  An *eo nomine* analysis determines the common meaning of a

specific listed exemplar in a HTSUS heading.  *Id*.; *see also Deckers Corp. v. U.S.*, 752 F.3d 949, 957 (Fed. Cir. 2014) (an *eo nomine* provision in the tariff law is what the commonly accepted meaning of the term happens to be, and where such common meaning is easily and clearly determined through judicial decisions and reports to Congress on the subject by recognized authorities, such fundings presumptively include the commercial as well as the common meaning) (internal citation omitted.)

      1.    <u>"Camera Housings" Are Not "Camera Cases," as Either Term is Commonly and Commercially Understood</u>

### ***"Camera Case"***

The term "camera case" is a commercially recognized construct of two words that is not defined in the tariff.  Where, as here, the HTSUS does not expressly define a term, "the correct meaning of the term is its common commercial meaning."  *GRK Canada, Ltd. v. U.S.*, 761 F.3d 1354, 1357 (Fed. Cir. 2014) ("*GRK Canada*") (citation omitted); *see also Otter Products, LLC v. U.S.*, 834 F.3d 1369, 1375 (Fed. Cir. 2016) ("*Otter Products CAFC*") ("[a]bsent contrary legislative intent, we construe HTSUS terms according to their common and commercial meanings, which we presume are the same.") To determine the common commercial meaning, a court may rely upon its own understanding of terms used, and may consult standard lexicographic and scientific authorities, dictionaries, and other reliable information sources.  *Id.*  Here, the dictionary definitions, uncontradicted expert testimony regarding commercial meaning of the term in camera industry, as well as previous CBP rulings and legislative history, all compel the conclusion that the Camera Housings are <u>not</u> *eo nomine* "camera cases."

      *a)*    <u>*Lexicographic Sources*</u>

The Focal Encyclopedia of Photography defines "camera case" as follows:

CASE, CAMERA <u>A container for storage and transport of a camera, sometimes with associated equipment.</u> To retain their performance with the necessary precision, <u>cameras and their accessories need protection while being stored,</u>

<u>transported, and used, especially in the field</u>. Thus, since the inception of photography, camera cases have been important to the photographer.

<u>The most utilitarian form of case is that intended for professional cameras and equipment</u>. Such cases are generally of a boxlike form with a plain hinged cover and constructed of wood, leather, plastic, or metal.  <u>Compartments and padding are usually provided for protection against damage from dropping or other physical abuse</u>. Because considerable weight may be involved, cases are often reinforced at the corners, and are provided with <u>a carrying handle, or handles if excessively large</u>.  Cases for aerial cameras, for instance, may be more like large trunks.

Cases intended for modern hand cameras, such as the 35-mm format, are constructed of leather or plastic and are designed to provide good protection for the equipment without being uncomfortable to carry or inviting attention. Some are designed to retain the cameras by means of a screw that attaches the bottom of the case to the tripod socket. In turn, this screw may itself be tapped to accept a tripod screw so that the camera and its case can be attached to a tripod. Other cases retain the camera by means of short leather snap retainers. The flap protecting the lens should be arranged so that there is little likelihood of its flopping into the field of view, and on some cases this flap can be detached. Larger flaps, or snouts are available to cover longer focal length or zoom lenses. <u>Shoulder straps are fitted for easier carrying, and small cases for spare rolls of film are often strung on these straps</u>.

<u>Some cases are designed to hold additional lenses, film, and an exposure meter or other camera accessories in addition to one or more cameras</u>. Such cases are usually of more rigid construction and both halves of the top may open out to permit ready access to the equipment.  Cases for extended field use tend to be more of a rugged construction than those to be used by amateur photographers.

<u>Many cases are designed with adjustable compartments so that photographers can customize them to their particular assembly of equipment and accessories</u>.

Well fitted soft leather pouches sometimes serve to protect small cameras, lenses, or exposure meters from dust, moisture, or the effects of handling.

The need for a separate camera case has been reduced with some small-format cameras that have attached but movable covers over the lens and other parts of the camera.

*Focal Encyclopedia of Photography* (3rd Edition 1993), at pp. 90-91 (emphasis added).

*See* Ex. P.

Five points are salient: the "camera cases" (i) are for the storage and transport of a camera with its associated equipment; (ii) are designed to hold additional lenses, film, and an exposure meter or other camera accessories in addition to one or more cameras; (iii) come with

adjustable compartments to organize equipment and accessories; (iv) come with carrying straps; and (v) have padding for protection against damage from dropping or other physical abuse.

b)    <u>Denomination of the Trade</u>

Uncontroverted expert testimony shows that the *Focal Encyclopedia's* definition of "camera case" is consistent with the use of the term in modern commerce.  The modern camera industry recognizes a "camera case" as involving four elements: it must protect, store, organize and transport a camera/cameras and their parts, and/or common accessories (*i.e.*, lenses, filters, flashes, lens cleaners).  **SUMF 39,** Ex. N, Expert Decl., par. 8.

What the industry commonly recognizes as a "camera case" is designed, merchandised, and expected to be used in a manner akin to luggage, and items that are stored within are not in use during storage.  **SUMF 40**, Ex. N, Expert Decl., par. 9, 16, 25.

Camera cases are typically "soft-sided" or "hard-sided".  **SUMF 41**, Ex. N, Expert Decl., par. 10.  Camera cases are designed to protect delicate cameras and lenses from drop, dust, dirt, debris and damage from sun light, humidity and temperature extremes between shoots and are typically made from polyester/nylon exterior fabric, non-scratch lining, zippers/closures (soft-sided camera cases) or fiberglass-filled nylon or similar plastic materials (hard-sided cases) and feature foam padding on exterior walls and between compartments. **SUMF 42**, Ex. N, Expert Decl., par. 14, 23.

Camera cases are specifically designed to provide a long-term storage solution for cameras, parts, and accessories between shoots. **SUMF 43,** Ex. N, Expert Decl., par. 15, 24-25.

Camera cases are designed to organize cameras, parts, and accessories in-between uses by using customized grid of padded dividers to separate and protect these elements as they are subject to damage if they come into even moderate unintended contact with each other.  **SUMF**

12

**44,** Ex. N, Expert Decl., par. 17-19, 26.  Cameras are powered down during storage and therefore organization in a camera case prevents accidental activation of power and filming buttons.  **SUMF 44**, Ex. N, Expert Decl., par. 18.

Camera cases are designed to transport cameras, parts, and accessories between shoot locations and while traveling to a destination and thus feature carrying straps, handles, and sometimes wheels.  **SUMF 45,** Ex. N, Expert Decl., par. 20-21, 27.

The camera and camera accessories are not functional while stored in the camera cases; they remain stored until their next use.  **SUMF 46**, Ex. N, Expert Decl., par. 16, 25.

GoPro designed and manufactured the GoPro CASEY Camera Case to protect, store, organize, and transport GoPro cameras, housings, lens, and various accessories.  **SUMF 47**, Comp. Ex. A6 (physical sample**)**, Ex. N, Expert Decl., par. 6.  The GoPro CASEY is uniformly recognized in the industry as a soft-sided camera case.  **SUMF 48**, Ex. N, Expert Decl., par. 28, 29.

c)   *Earlier Decisions by the CBP*

The earlier rulings from CBP regarding classification of "camera cases" have been consistent with their commercial meaning in the industry.  In NY N237453, dated February 6, 2013, the CBP classified a camera case designed to provide organization, storage, portability, and protection to a digital camera as a "camera case" in subheading 4202.99.00, HTSUS.  In N208448, dated April 3, 2012, the CBP classified a camera case in subheading 4202.99.00, HTSUS, stating, "[t]he case is not considered to be a part of the camera as it does not contribute to the function of the camera itself").  In N0447863, dated January 8, 2009, the CBP classified a camera case with a main compartment, mesh pocket, shoulders straps, and a hook-and-loop flap closure as a "camera case" in subheading 4202.99.00, HTSUS.  The Government's position in the present action is therefore inconsistent with these prior rulings (**Ex. D**, Government's Responses to First Set of Interrogatories, Nos. 1-4).  Even more so considering

that CBP has advocated against classification of the "camera housings" as the "camera cases" and has been aware that the physical and functional characteristics of the camera housings substantially differ from those attributed to "camera cases."  **SUMF 53**, Ex. K.

> d)      *Congressional Intent*

The Congressional intent has always been that the listed exemplars in the heading 4202, especially in the first category, constitute "travel goods."

This notion is evidenced by the history of the tariff itself.  Additional U.S. Note 1 to Chapter 42 states that Heading 4202 covers goods "of a kind designed for carrying clothing and other personal effects during travel" (emphasis added) while clarifying that "binocular cases, camera cases, musical instrument cases, bottle cases and similar containers" are not designed for clothing and person effects.

The current title of Chapter 42 directly describes the relevant scope of the chapter as relating to "travel goods, handbags and similar containers"; while Note 2(h) to Chapter 48 also refers to the articles of Heading 4202 as "for example, travel goods."

It is important to note that these requirements for the exemplars did not come to the Federal Circuit out of thin air, but rather, are rooted in the history of the TSUS and the HTSUS themselves.  Under the TSUS, Headnote 2(a)(ii) provided that the term "luggage" covered, *inter alia*, brief cases, school bags, golf bags, camera cases and "like containers and cases designed to be carried with the person..."  *Aladdin Int'l Corp. v. U.S.*, 13 C.I.T. 1038, 1043 (1989).  The *Aladdin* court also held of such luggage and travel goods, that "[i]t would appear that items falling under this interpretation of travel would need to be sturdy enough to withstand rough handling" …and that accordingly, the clear intent in enacting this provision was to encompass such travel goods as are primarily used for travel.  The *Aladdin* court cited *DRI Industries*, *Inc. v. U.S.*, 657 F. Supp. 528, 533 (C.I.T. 1987), for the proposition that carrying is part of travel as in "to be carried with the person from place to place or job to job, around or

outside the home."  Hence, in *Camera Specialty*, leather "camera cases" were specifically leather items that added no functionality to the cameras, covered the lens with a protective flap, and which had "no other practical use" than to carry cameras.  *Camera Specialty, Inc. et al. v. U.S.*, 37 Cust. Ct. 144, 146 (1956).

The linkage from this language originating in the TSUS is reinforced by the TSUS-HTSUS Correlation tables[5] which show that current HTSUS subheading 4202.99, originated from its predecessor TSUS provisions which also described various types of luggage (*i.e.*, travel goods). Specifically, the predecessor subheading 706.62.45, Tariff Schedule of the United States ("TSUS"), described, "[b]riefcases, school bags, photographic, equipment bags, camera cases, occupational luggage cases and like containers and cases designed to be carried with the person, provided for in subpart D, headnote 2(a)(ii)".

The definition most applicable to heading 4202 articles therefore may have been taken from the synonym "luggage," or "baggage".  Per the Oxford Dictionary, a "case" as "an item of luggage; a suitcase", with synonyms such as: briefcase, attaché case, trunks, and chests.  *See,* Eckhardt Decl. ¶ 18, Ex. Q.

### *"Camera Housing"*

By contrast, the camera industry distinguishes the class of goods described as "camera housings" from those referred to as "camera cases," and recognizes that camera housings are different commercial articles with different purposes from camera cases.

In relation to underwater photography, industry's lexicographic sources specifically describe functional waterproof "housings" (and not "camera cases"):

> **UNDERWATER CAMERA** Underwater photography can be done three ways using different types of camera systems.  A photographer can use a general camera that is placed in a special water-tight housing made from either plastic or aluminum and

---

[5] *See*, "Continuity of Import and Export Trade Statistics After Implementation of the Harmonized Commodity Description and Coding System, Report to the President on Investigation No. 332-250 Under Section 332 of the Tariff Act of 1930," USITC Publication 2051, page 2954 (United States International Trade Commission, January 1988).

constructed to operate to only a specific depth.  <u>All of the normal functions of the conventional camera are attached to an extension apparatus that passes through the outside of the housings to allow the diver access to some of the controls.</u>

*Focal Encyclopedia of Photography* (3rd Edition 1993), at p. 86 (emphasis added).  *See*, Ex. P, Excerpts from Focal Encyclopedia.

In other words, the camera industry recognizes that unlike camera cases, housings are functional devices that are principally designed to be used with the camera, during active filming.  In fact, as uncontroverted expert testimony shows, the camera industry develops and markets camera cases as storage and organizational solution for cameras, camera housings, and accessories.  **SUMF 47, 48**, Ex. N, Expert Decl., par. 4, 6, 28, 29.  To the contrary, the camera housings are not considered storage or organizational solution by the industry.  **SUMF 35**, Ex. N, Expert Decl., par. 46.

Accordingly, the Camera Housings are not *eo nominee* "camera cases" as commonly and commercially understood.

2. <u>The Camera Housings Do Not Possess the Essential Characteristics Uniting the Listed Exemplars in Heading 4202</u>

Absent limiting language or contrary legislative intent, *eo nominee* ordinarily includes all forms of the named article; however, *eo nomine* designation are not open ended and are limited by legislative intent and by judicial decisions.  *Deckers*, 752 F.3d at 957 (internal citation omitted).  As the Customs Court, the predecessor of the Court of International Trade, has held, if a named exemplar is limited by other language in the tariff provisions or legislative history, "the *eo nomine* analysis will only include articles that possess the essential characteristics of the specially named or enumerated article."  *Id.* (Internal citation omitted.)

On numerous occasions the Federal Circuit has examined the heading 4202 and held that the essential unifying characteristics of the listed exemplars are (1) storage, (2) organization, (3) transport, and (4) protection. *Totes, Inc. v. U.S.,* 69 F.3d 495, 498 (Fed. Cir. 1995); *Len-Ron Manufacturing Co. v. U.S.*, 334 F.3d 1304, 1313 (Fed. Cir. 2003) ("*Len-Ron*");

*Avenue in Leather, Inc. v. U.S.*, 423 F.3d 1326, 1332 (Fed. Cir. 2005)("*Avenues III*") (quoting *Avenue in Leather v. U.S.*, 317 F.3d 1399, 1402 (Fed. Cir. 2003)("*Avenues II*"); *Otter Products CAFC,* 834 F. 3d at 1376.

To be an *eo nomine* "camera case," therefore, the Camera Housing would also need to store, organize, transport, and protect its item.  However, the Camera Housings are not designed for and do not accomplish these purposes because they do not (1) put an inactive camera away into storage; (2) they do not effectively transport an inactive stored camera; (3) they do not organize multiple stored items; and (4) they do not protect as a camera case would.

A Camera Housing is bespoke to a single action camera, and the camera remain fully functional while enclosed in these Camera Housings.  Such housings are necessary for the operation of the camera underwater and in all of its intended situations involving mounted, hands-free action camera filming.  As primarily functional items, the Camera Housings are substantially different in character from all items described as "travel goods" in Chapter 42, and by this specific *eo nomine* provision for "camera cases".

### a)  *The Camera Housings Do Not "Store" Items*

The Camera Housings do not possess the essential characteristic of "storing."

The requirement is that an item "stores" away, such that it is not in use.  *Otter Products CAFC*, 843 F.3d at 1379-80 (affirming the CIT, "[s]pecifically, the Court of International Trade noted that the common understanding of "store" implies setting something aside – '[i]t does not include present use but looks toward using whatever item is stored in the future.")  Hence, the exemplars of 4202 share "the inability to use the items when inside those containers."  *Id.* at 1374*, citing to Otter Products,* 70 F. Supp. 3d 1287, 1292 (C.I.T. 2015) ("*Otter Products CIT*").

Whether the items within camera case are in use or not, is therefore an *indicia* of whether they are being "stored."  As was shown by the importer Otter Products, LLC, and

acknowledged by both the CIT (*Otter Products CIT*, 70 F. Supp. at 1292) and Federal Circuit (*Otter Products CAFC*, at 834 F. 3d at 1380), none of the articles listed in heading 4202 permit use of the enclosed items.  *See, Otter Products, LLC v. U.S.*, Case No. 1:13-cv-00269-CRK (*Otter Products CIT*), Docket No. 25-2, Ex. F (expert declaration) ("trunks" are designed such that one cannot actively use (or even see) the items in the trunk while those items are inside the trunk;  "suitcases" are not designed in a manner that would allow a person to wear or otherwise use the items in the suitcase (or even see such contents) while those items are inside the suitcase; "vanity cases," "attaché cases and briefcases," and "school satchels" are all designed and manufactured to hold a number of items when those items are not being used; "spectacle cases" are designed and manufactured such that one cannot use spectacles while in the case; "binocular cases" are designed and manufactured such that one cannot use binoculars while in the case; "musical instrument cases" are designed such that one cannot play the instrument while it is inside the case; "camera cases" are designed and manufactured to hold a camera when it is not being used; cases are designed such that one cannot use a camera while it is inside the case; "gun cases" are designed and manufactured such that one cannot fire the gun while it is inside the case; "holsters" are designed and manufactured such that one cannot fire the gun while it is inside the holster.)

The CIT then incorporated this evidence, and used it as the basis for its opinion, "[t]he exemplars "trunks, suitcases, vanity cases, attaché cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters" are not ones which permit the use of the enclosed item." *Otter Products CIT*, 70 F. Supp. at 1292. In ruling that cell phones remain fully functional while inside the Otter Products' phone cases, the CIT stated that "retaining 100% functionality is inconsistent with 'storing'" and thus beyond the reach of heading 4202.  *Id*. at 1294.  The Federal Circuit affirmed.  *Otter Products CAFC*, at 834 F. 3d 1379-1380.

18

Here, the Camera Housings are not only designed to allow a user to make full use of the action cameras (**SUMF 32**), but they are also designed to enable and enhance that use. **SUMF 19-21**, **24-25**.  Indeed, a camera cannot function in the specific dynamic environments it is designed to be used in (*e.g.*, underwater or mounted on the side of a race car or dropped in a volcano) without the Camera Housing.  **SUMF 13-14.**

It is undisputed that the Camera Housings are designed for use with an action camera such that the camera retains 100 percent of its functionality and interactivity while inside the Camera Housing.  **SUMF 32**.  The user can power on the in-housed camera, trigger its operation, and manipulate all functions and settings, while viewing all camera display readouts. It is undisputed that the Camera Housings : (1) interface with the operational control buttons of the action cameras (**SUMF 20**); (2) mate an aluminum heat sink to the action camera in order to dissipate camera generated heat into the environment (*vis-à-vis* the flat optional glass assembly of the housing) (**SUMF 25**)**;** (3) merge optically with the camera lens (**SUMF 19**); (4) add additional features necessary to action camera photography by means of optical coatings (*i.e.*, antifog, water-shedding, UV-resistance, and anti-glare) (**SUMF 19**); (5) secure the camera within (particularly in the ability to resist inadvertent opening caused by high pressure during underwater photography) (**SUMF 17, 21**); and (6) add the ability to mount the camera in a vast array of locations (such as from the outside of an airplane, to the bow of a surfboard, or to the back of a running dog) to accomplish action camera photography (**SUMF 10, 11**, **12**, **24**); and (7) in most instances, allow for underwater, or even deep sea immersive recording (**SUMF 8, 27, 28**).  It is undisputed that the principal purpose of the Camera Housing lies in this functionally and interactivity during the camera's use.  **SUMF 33**,  Ex. N, Expert Decl., par. 32.

It is also undisputed that the Camera Housings are not principally intended as a storage solution for the action camera; in fact, GoPro's CASEY line of camera cases was developed for that explicit purpose. **SUMF 33-34**, **47, 48**, Ex. N, Expert Decl., par. 6, 28, 29.

It is undisputed that if the Camera Housings are used as a primary storage solution, the Camera Housing lens assembly (and their optical coatings) would be susceptible to dust, scratches, and drops damages, potentially rendering the action camera unusable or unsuitable for use. **SUMF 36**, **37**, Ex. N, Expert Decl., par. 37, 41. And it is undisputed that the power and operational buttons may be inadvertently activated if stored and transported in the housing, leading to battery failure and memory overwrites, and that the buttons themselves would be exposed to an accumulation of dirt and grim. **SUMF 38**, Ex. N, Expert Decl., par. 37, 41.

The government has taken the position that residual storage nevertheless occurs in the housing as a type of fugitive use which is either part and parcel of filming, or between filming, or otherwise (*i.e.*, despite the fact that camera housing is <u>not</u> designed or intended as GoPro's storage solution for cameras, mounts, and accessories). *See*, Ex. D, Government's Responses to First Interrogatories, No. 2, at p. 3. This position is misplaced. For example, in *Len-Ron*, the Federal Circuit determined that vanity cases were classified in 4202 because "any article so classified must have the "containing, carrying, or organizing" of cosmetics as its "<u>predominant use.</u>" *GRK Canada*, 761 F.3d at 1358 (citing *Len–Ron* 334 F.3d at 1311) (Fed.Cir.2003) (emphasis added). Whereas in *Camelbak Products, LLC. v. U.S.*, 649 F.3d 1361 (Fed. Cir. 2011) ("*Camelbak*"), the Federal Circuit determined that hydrations packs (which are also carried on the back with straps and contain storage spaces), are nevertheless still not *eo nominee* backpacks due to their additional hydration functions. Such "hydration" functions are not merely improvements to the core functions of the backpack, but rather, represent substantial difference from those functions. Likewise, as further discussed in subsection 3, *supra*, at p. 23, even if there were a latent storage function inherent in functional

Camera Housing, those Housings are still substantially beyond the scope of heading 4202 in terms of their functionality.

Here, all available record evidence demonstrates that the predominant use (including design, purpose, and marketing) of the Camera Housings is not oriented for camera storage, but rather for function to enable action camera footage (by means of adjustable mount interfaces, optics, waterproofing, pressure resistant latches, control interfaces, heat dissipation, etc.).

> b)      *The Camera Housings Do Not "Organize" Multiple Items.*

Another fundamental characteristic of the exemplars in heading 4202 is the ability to organize multiple items while they are placed in storage. *Otter Products CAFC*, 834 F.3d at 1379 (stating that the importer presented sufficient evidence that "[c]amera cases often contain extra lenses, batteries, cables, and memory cards.  Binocular cases often contain straps, cleaning cloths, lens caps, and other accessories.  Gun cases and holsters may contain multiple guns and rounds of ammunition[]" and that the same is true for the other exemplars in Heading 4202.)

Unlike the camera cases, however, the Camera Housings do not place multiple items into long term storage between uses.  It is undisputed that the Camera Housing is bespoke to a single functional GoPro HERO action camera.  **SUMF 16**.

The government may attempt to assert "organization" is present due to the presence of tiny desiccant strips and enhancement modules that can be optionally incorporated into certain models of the Camera Housings.  Ex. D, Government's Responses to First Interrogatories, No. 1 at pp. 2-3.  Government's position is unavailing.

Some but not all Camera Housings feature tiny slots into which a user may opt to place tiny 2-millimeter-thick strips made out of a desiccant material ("Anti-Fog Inserts") that absorb excess moisture from the air within the housing during active filming in wet/humid conditions,

to prevent undesirable condensation.  **SUMF 30**.  The Camera Housings do not "store" or organize" the desiccant inserts – they are only used during active filming in wet conditions. Undisputed testimony establishes that if the Anti-Fog Inserts are left in the camera housing (which is subject to opening and closing to access the battery and memory), they can quickly become fouled due to their exposure to new humidity.  The Inserts are therefore <u>sold with their own storage bag</u> which is tailored to the product by being made from a flexible durable airtight ("Ziploc"-type) bag that can remove air from the sealed chamber.  **SUMF 30**, Comp. Ex. A7, physical sample.

The earlier models of the GoPro action cameras can be optionally enhanced with modular add-ons camera parts called "BacPacs." **SUMF 31**.  Because earlier camera models are smaller and have no display in the back, a larger camera battery or a rear liquid crystal display can be added.  It is undisputed that the BacPac module plugs into the action camera via physical and electrical ports becoming a part of the camera before placement into the housing. *Id*.  In such situations, the Camera Housing is likewise customized with a larger back door, to accommodate the correspondingly larger size of the "enhanced" action camera.  *Id*. It is undisputed that these BacPac items physically and electrically connect to the HERO action camera – merging with the camera itself – and are used during active filming.  **SUMF 31**. Hence, if a BacPac item is incorporated onto the camera, then the housing still only contains one operational camera (albeit with a larger battery or with an LCD back screen).  Moreover, BacPac devices have to be removed for the user to gain access to the battery and memory and these BacPac devices contain delicate electrical connectors.  *Id*. Therefore, these BacPacs are not meant to be "stored" in the housing. It is undisputed that each <u>BacPac is sold with its own hard-sided plastic storage case</u> that is again specifically designed to the product.  *Id*.  The BacPac storage cases are molded to the item and hence, protect the delicate electrical

connectors.  *Id.*, Comp. Ex. A8, A9, physical samples of Battery BacPac and LCD BacPac and their storage containers.

Even if disputed, these issues do not rise to a genuine issues of material fact, because application of heading 4202 is precluded on the basis of the principal functionality of the camera housing.

> c)   *The Camera Housings Do Not "Carry" Items*

The next unifying characteristic of the exemplars of heading 4202 is the ability to carry or transport the items being held.  *Otter Products* CIT, 70 F. Supp. 3d at 1293; *Otter Products CAFC*, 834 F.3d at 1380.  In *Otter Products*, both the CIT and Federal Circuit agreed that each exemplar allows for transport while various items are stored away and *not* being used.

It is undisputed that "camera cases" do typically have a handle, or straps, or wheels designed to assist in the carrying of the item(s) being held.  **SUMF 45**.  The GoPro CASEY for example is a camera case that does include a carrying handle.  **SUMF 47**, Comp. Ex. A6, physical sample.  In contrast, the Camera Housings do not have the handles or straps necessary for such a carrying purpose.  **SUMF 23**.

The Government has expressed its position that since the Camera Housings facilitate mounting and securing (for the purposes of filming), that should be sufficient to satisfy the "carrying" function that a "camera case" would perform.   Ex. D, Government's Responses to First Interrogatories, No. 3, at p. 3.  This position is misplaced.  While the Camera Housing does mount into the GoPro system of mounts (**SUMF 12, 24**); the purpose is not for "carrying," but for filming.  As CIT aptly put in *Otter Products*, "securing is not the same as carrying." *Otter Products* CIT, 70 F. Supp. 3d at 1293.  The purpose of the mounting system is to enable hand-free filming, which is the fundamental premise of action camera videography.  **SUMF 10-12, 24.**

        d)      *The Camera Housings Do Not "Protect" Items in the Same Manner as a Camera Case*

While the Camera Housings are protective in nature, it does not have the same protective character as a camera case.

For example, it is undisputed that the camera cases are often constructed with protective features such as a rugged exterior material, and internal protective cushioning.  **SUMF 42.**  In contrast, the Camera Housings do not possess either exterior or interior padding.  **SUMF 22**. The Camera Housings do not feature a protective lens covering for storage or transport of the action camera. **SUMF 29**.

Undisputed testimony demonstrates that camera cases are protective against drop, dirt, dust, and debris.  **SUMF 42-43**.  In contrast, the Camera Housings themselves need to be protected from such damage.  **SUMF 36-38**. It is undisputed that camera cases (*e.g.*, the GoPro CASEY camera case) are tested at minimum to a 1-meter drop test.  **SUMF 42**.  In contrast, however, the Camera Housings are subject to potential damage if the optically-coated glass lenses are dropped onto rough ground, since scratches to the lens could rendering camera footage unusable.  **SUMF 37**, Ex. N, Expert Decl., par. 36, 37.

Hence, although the Camera Housings are "protective" and ruggedized for purposes of action camera filming, they are certainly not protective in the same manner, or for the same purposes as is a "camera case."

    3.    The Purpose and Function of the Camera Housings is Inconsistent with the Exemplars of 4202, and Different from a "Camera Case"

The objective of an *eo nomine* designation is to capture all forms of the articles known to commerce, even including articles that have "been improved or amplified but whose essential characteristic is preserved or only incidentally altered."  *Casio, Inc. v. U.S.*, 73 F.3d 1095, 1098 (Fed. Cir. 1996).  When speaking of such articles known *eo nominee* to commerce,

use has always been of "paramount importance" in reaching commercial meaning. *GRK Canada*, 761 F.3d at 1358 (Fed. Cir. 2014) (internal citations omitted).

Thus, when an article "'is in character or function something other than as described by a specific statutory provision—either more limited or more diversified —and the difference is significant,'" it is not properly classified within an *eo nomine* provision. *Casio*, 73 F.3d at 1097 (internal citations omitted). As the Federal Circuit concluded in *GRK Canada*:

> Therefore, an *eo nomine* classification within HTSUS must capture all forms of a named good, including improvements that do not change the essential characteristic of the articles. Consequently, to be workable, HTSUS provisions must be defined distinctly enough to allow the classification of improved forms of goods —provided that such improvements are not fundamental changes. The use of goods may be an important aspect of the distinction of certain *eo nomine* provisions, in particular, where, as here, the name of the provisions refers directly to the use of subject articles. This is why, even within the context of the HTSUS, we should not be "so trusting of our own notions of what things are as to be willing to ignore the purpose for which they were designed and made and the use to which they were actually put."

> *GRK Canada, Ltd.,* 761 F.3d at 1360-61.

To determine whether such a difference is significant enough to remove an article from an *eo nomine* provision, the Federal Circuit has explained that we must look to "'whether the item possess[es] features substantially in excess of those within the common meaning of the term,'" or whether the subject article is "a change in identity of the article described by the statute." *R.T. Foods, Inc. v. U.S.*, 757 F.3d 1349, 1354 (2014) (*citing CamelBak*, 649 F.3d at 1365). In such an analysis, the court's inquiry should include (1) the subject article's physical characteristics, as well as what features the article has for typical users, (2) how it was designed and for what objectives, and (3) how it is marketed. *Id*. at 1367–69; *GRK Canada*, 761 F.3d at 1358.

For example, in *CamelBak*, the Federal Circuit found that hydration packs were not merely "improved backpacks" precisely because their principal purpose was substantively different from that named provision. *CamelBak*, 649 F.3d 1361. As explained by the Federal

Circuit, the "hydration component of the subject articles was not merely incidental to the cargo component but, instead, provided a **<u>unique identity and use</u>** that removes them from the scope of the *eo nomine* backpack provision." *Id.* at 1369 (emphasis added).

Here, it is undisputed that the Camera Housings (1) do physically work together with the action cameras, (2) are designed to function during action camera filming, and (3) are marketed towards the purpose of action camera footage (rather than as a storage and carrying solution). **SUMF 8, 10-12, 17, 19-21, 24-25, 27, 28, 35.** It is further undisputed that the subject merchandise is designed for active use in conjunction with action camera filming. **Id.** The camera cases are explicitly for storage and organization, and do not themselves play a functional role in photography, whereas Camera Housings are not designed to put multiple goods into long-term storage for the purpose of their organization and transport. **SUMF 33, 43-46.** It is undisputed that the principal purpose of the Camera Housing is for its functional use with the action camera during filming. **SUMF 33**.

In fact, the because the Camera Housings are not adequate for long term storage and cannot organize the camera system while in storage, GoPro developed and markets a line of CASEY camera cases which do meet all of the essential characteristics of heading 4202. **SUMF 33-34, 47, 48**, Ex. N. Expert Decl., par. 6, 28, 29. The difference between the CASEY and the Camera Housings boils down to function and is readily apparent from the character of the goods themselves.

Ample uncontroverted evidence which supports the legal conclusion that Camera Housings do possess a unique identity and use that is distinct from a camera case of heading 4202 exists. As in *Camelbak*, the Camera Housings hold a unique identity and unique uses, which remove them from the scope of "camera cases." The Camera Housings are therefore not *eo nomine* "camera cases" as commonly and commercially understood and do not belong in heading 4202.

**C.      The Camera Housings Are Not Classifiable as "Similar Containers" of Heading 4202**

Interpreting the term "similar containers" requires an *ejusdem generis* analysis to determine if the goods are "of the same kind" as those listed in the heading. *Otter Products CAFC*, 834 F. 3d at 1376.  In classification cases, *ejusdem generis* requires that, for any imported merchandise to fall within the scope of the general term or phrase, the merchandise must possess the same essential characteristics or purposes that unite the listed exemplars preceding the general term or phrase.  *Avenues III*, 423 F. 3d at 1330.   As detailed above, because the Camera Housings' essential characteristics and primary purpose are to enable the functioning of the GoPro action camera underwater or during extreme activities, and not to store, organize, or carry the action camera, an *ejusdem generis* analysis necessarily fails.  The subject merchandise is therefore excluded from classification as "similar containers" in the heading 4202, HTSUS.

**IV.      The Subject Merchandise is Properly Classified in Heading 8529 as "Parts"**

The Camera Housings are *prima facie* classifiable under heading 8529 as a "part" of a GoPro action camera as they are (1) designed solely and exclusively as a part of the GoPro action camera system, (2) hold no function outside of their use within GoPro action camera system, nor (3) are the cameras intended for independent use without these housings.

Qualification for a parts provision may involve a two-pronged approach under the *Willoughby* and *Pompeo* cases.  *Bauerhin Techs. Ltd. Pshp. v. U.S.*, 110 F.3d 774 (Fed. Cir. 1997).[6]   In 1933, the *Willoughby* court, determined a part must be "an integral, constituent, or component part, without which the article to which it is to be joined, could not function as such

---

[6]  Although *Bauerhin* addressed a different parts subheading of the HTSUS, it is nevertheless broadly applicable to all parts subheadings, as Additional U.S. Rule of Interpretation 1(c) provides a universal interpretation for all parts provisions. Consequently, under that precedent, the Camera Housings are "parts" of the GoPro camera.

article."[7] *U.S. v. Willoughby Camera Stores, Inc.*, 21 C.C.P.A. 322, 324 (1933). Under *Willoughby*, a product may be considered a part if it is necessary to the intended operation of the good to which it was attached. *Id.*

In 1955, the *Pompeo* court created a new analysis when it held a "part" was an item "dedicated irrevocably" to its use.[8] *U.S. v. Pompeo*, 43 C.C.P.A. 9, 13 (1955). In 1960, the rule in Willoughby was expressly limited "to fact situations of the precise type which the court had before it." *Gallagher & Ascher Co. v. U.S.*, 52 C.C.P.A. 11, 15–16 (1964) (internal citation omitted).

In 1997, *Bauerhin* integrated both the *Willoughby* and *Pompeo* approaches. The *Bauerhin* court explained that because the camera tripods discussed in *Willoughby* could be used for many purposes the *Willoughby* decision had not addressed "the situation where an imported item is dedicated solely for use with an article." *Bauerhin* at 779. The *Bauerhin* court was assessing whether canopies for car seats might be parts of those seats. The Federal Court determined that while not *per se* necessary (per *Willoughby*) for the intended function of the car seat, a canopy was nevertheless a part for the seat because it (1) "serve[d] no function that is independent of the child safety seat" and also, (2) the canopies were "undisputedly designed, marketed, and sold to be attached to the child safety seats" per *Pompeo*. *See*, *Bauerhin*, 110 F.3d at 779. Hence, *Bauerhin* stands for the proposition that the two-pronged framework in which the *Willoughby* test is not exclusive:

> We conclude that these cases are not inconsistent and must be read together. As set forth in *Willoughby Camera*, an "integral, constituent, or component part, without which the article to which it is to be joined, could not function as said article" is surely a part for classification purposes. 21 C.C.P.A. at 324. However,

---

[7] *See*, *Willoughby*, 21 C.C.P.A. 322, 324 (quoted in *Bauerhin*, 110 F.3d 774, 779). On that basis, the court in *Willoughby* found that a camera tripod could not be considered a camera "part." *Id.*

[8] In *Pompeo*, the CCPA determined that a "supercharger" designed for after-market installation in an automobile could be considered a "part", despite the fact that the automobile was fully functional without the supercharger, because the supercharger was "dedicated irrevocably for use" with automobiles.

28

that test is not exclusive. Willoughby Camera does not address the situation where an imported item is dedicated solely for use with an article. Pompeo addresses that scenario and states that such an item can also be classified as a part.

*Bauerhin*, 110 F.3d at 779 (1997) (emphasis added).

Here, the Camera Housings are designed only for use with the GoPro HERO action cameras (and the cameras – for their housings).  The Camera Housings are not like the tripods in *Willoughby* in that they are not used across multiple brands of cameras, or with other devices such as azimuths, levels, optical telescopes, sights, *etc*.

The Camera Housings are necessary and integral to the intended use of the camera as an "action camera" within GoPro's system of action camera filming, including being (a) necessary and integral to the operation of these specific action cameras (**SUMF 8, 12-14, 17, 19-21, 25, 27, 28**); and (b) being necessary and integral as the interface between the action cameras and their mounting systems.  **SUMF 12, 24.**

Unlike *Rollerblade*, where protective skate pads were not physically attached to, and did not act directly upon the skates, the Camera Housings do directly attach and do functionally interact with the cameras.  *Rollerblade, Inc. v. U.S.,* 282 F.3d 1349, 1353 (Fed. Cir. 2002).  The Camera Housing interfaces with the control features of the action camera (**SUMF 20**), with the optics of the action camera (**SUMF 19**), and even with the heat dissipation system of the action camera (**SUMF 25**) to facilitate action camera recording.  The waterproofing features improve the function of the camera, and are necessary to action camera photography in snow, rain, surf, swim, underwater activities, and the like.  **SUMF 28**.

Having already been designed for bespoke fit to facilitate this direct functionality with specific GoPro action cameras, the Camera Housings are then marketed and sold to consumers solely for such functional use with these action cameras.  **SUMF 12, 16, 32, 33**.  The Camera Housings are neither intended as a storage solution, nor marketed as such.  **SUMF 35**.  As far as storage solutions are concerned, GoPro actively markets its CASEY camera cases to satisfy

the need for organizing and transporting multiple items in a safe storage travel case.  **SUMF 47-48**.

For the foregoing reasons, the oddly shaped Camera Housing are physically unsuitable as storage solutions. Therefore, any attempt on GoPro's part to market the camera housing as such a travel case solution would only undermine GoPro's credibility, and such marketing would be contrary to the marketing of its own CASEY line of camera cases.

As is analogous to the car seat canopies in *Bauerhin*, the superchargers in *Pompeo*, and even with the 'universal' tripods discussed in *Willoughby*, the Camera Housings meet both prongs of analysis and are therefore "parts" of the GoPro HERO cameras, *prima facie* classifiable under heading 8529 as camera parts.

A parts determination is further consistent with Section XVI, Note 2(b), which requires that insofar as parts of machines classified in Chapter 85 are concerned:

> (b) Other parts, if suitable for use solely or principally with a particular kind of machine, or with a number of machines of the same heading (including a machine of heading 8479 or 8543) <u>are to be classified with the machines of that kind</u> <u>or in heading</u> 8409, 8431, 8448, 8466, 8473, 8503, 8522, <u>8529</u> or 8538 as appropriate...

Section XVI, Note 2(b), HTSUS (emphasis added).

The appropriate subheading would therefore be 8529.90.8600.

Subsequent models of the GoPro HERO action cameras (Hero5 to Hero 10) have integrated the Camera Housing functions (waterproofing, durability, mountability, *etc.*) into the body of the camera.  **SUMF 15**.   The HERO9 has been submitted to the Court as an example of this "integrated" housing.  *See*, Comp. Ex. A11(physical sample).  This integration establishes that the functionality of the Camera Housings from earlier models were, in fact, integrated directly into the camera as camera functions.  The principal function of the Camera Housings are therefore functions that are *de facto* necessary and integral to action camera filming.

Based on the foregoing, GoPro respectfully submits that the Camera Housings are classifiable under subheading 8529.90.8600, as parts of digital video cameras. The Camera Housing is not a "camera case" for the storage and organization of the action camera system when it is inoperable. Rather, the Camera Housing is an active, integral, indispensable, and functional part of the HERO action camera system and indeed to the action camera itself.

**V.     Alternatively, the Subject Merchandise is Properly Classified in Heading 3926 as "Other Articles of Plastics"**

Alternatively, if the Camera Housings are not "parts", then they would be classifiable under the basket provisions of Heading 3926 as "[o]ther articles of plastics and articles of other materials of headings 3901 to 3914."

The Camera Housings are predominantly composed of polycarbonate plastic. **SUMF 18**. In the event the Court finds that the Camera Housings are not classifiable in heading 8529, HTSUS, they should be classified according to their material composition, in heading 3926, which provides for: "[o]ther articles of plastics and articles of other materials of headings 3901 to 3914." Since none of the specific subheadings apply, the goods would be classified in the residual basket provision found at 3926.90.9990.

Chapter 39 Note 2(s) excludes articles of Section XVI; hence, if the Camera Housings do qualify as "parts", they would be excluded from Chapter 39, and are also more specifically described as parts within Chapter 85, rather than either Chapters 39 or 42.

## CONCLUSION

Because the subject merchandise is not classifiable in heading 4202, HTSUS, it should be classified in heading 8529, HTSUS, or, alternatively, in heading 3926, HTSUS.

For the foregoing reasons, GoPro respectfully requests the Court hold that the subject merchandise is correctly classified under subheading 8529.90.86 or, alternatively, under subheading 3926.90.99, HTSUS.

31

GoPro paid all duties at the time of entry at the 4202 rate of 20 percent *ad valorem*. Because the proper rate is zero percent (per 8529.90.8600) or, alternatively, 5.3 percent (per 3926.90.99), GoPro requests refund of the difference across all subject entries, inclusive of interest accruing.

Dated: August 5, 2022                   Respectfully submitted,

/s/ Alena A. Eckhardt
Alena A. Eckhardt, Esq.
Matt Nakachi, Esq.
JUNKER & NAKACHI, P.C.
50 California Street, Suite 1500
San Francisco, CA 94111
(415) 498-0070
alena@tradelawcounsel.com
matt@tradelawcounsel.com
Counsel for Plaintiff, GoPro, Inc.

## CERTIFICATE OF COMPLIANCE

### Pursuant to the Chambers Rules of the Court of International Trade

The undersigned, counsel for Plaintiff, GoPro, Inc., hereby certifies that, in compliance with the Chambers Rules of this Court, the foregoing Memorandum of Law in Support of Plaintiff GoPro, Inc.'s Motion for Summary Judgment is prepared using Microsoft Word, and contains 10,045 words, which does not include the tables.

This supporting memorandum therefore complies with the rule, which limits a brief to 14,000 words. The undersigned certifies that the document was prepared in Microsoft Word, and that this is the word count Microsoft Word generated for this document.

Dated:   August 5, 2022

Respectfully submitted,

*/s/ Alena A. Eckhardt*
Alena A. Eckhardt, Esq.
Matt Nakachi, Esq.
JUNKER & NAKACHI, P.C.
50 California Street, Suite 1500
San Francisco, CA 94111
(415) 498-0070
alena@tradelawcounsel.com
matt@tradelawcounsel.com
Counsel for Plaintiff, GoPro, Inc.