**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

|  |  |
|---|---|
| GoPro, Inc.,<br><br>                    Plaintiff,<br><br>     v.<br><br>United States,<br><br>                    Defendant. | Court No. 20-00176 |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................1

II. UNDISPUTED FACTS ESTABLISH THE SUBJECT CAMERA HOUSINGS ARE NOT CLASSIFIABLE IN HEADING 4202, HTSUS ........................................4

 A. The Government Does Not (And Cannot) Dispute That Camera Housings Are Principally Functional .................................................................4

 B. The Government Fails To Show That The Camera Housings Are Principally For Storage, Protection, Transport, And Organization ......................................5

  1. Storage ......................................................................................5

  2. Protection During Storage.....................................................7

  3. Transport .................................................................................8

  4. Organization............................................................................9

 C. The *Focal Encyclopedia* Establishes That A "Camera Case" Is Different From A "Housing" .............................................................................10

  1. The *Focal Encyclopedia* Establishes that "Camera Cases" Do Store, Transport, Protect, and Organize ........................................10

  2. The *Focal Encyclopedia* Distinguishes "Camera Cases" from "Underwater Housings" ......................................................11

III. GOVERNMENT'S REBUTTAL ARGUMENTS LACK MERIT ............................11

 A. Government Is Incorrect In Stating That That *Ejusdem Generis* Factors Are Inapplicable To The "Camera Case" Provision ...............................................11

 B. The Government Incorrectly Asserts The Explanatory Notes Provision For "Camera Accessory Cases" Impacts The Classification Of The GoPro Camera Housings ..........................................................................13

  1. The Explanatory Notes Are Inapplicable.............................13

  2. The Government Misstates GoPro Expert's Deposition Testimony....15

 C. The Government Is Incorrect That Expert Testimony Must Show "Uniform" Commercial Meaning.......................................................................17

 D. Certain Of Defendant's Proffered Exhibits Are Irrelevant, Misleading And Lack Foundation .............................................................................18

IV. CONCLUSION...........................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

**Harmonized Tariff Schedule of the United States (HTSUS)**

Chapter 39,
    Heading 3926 ........................................................................................................21

Chapter 42,
    Heading 4202 ....................................................................................................passim
        Subheading 4202.99.9000 .......................................................................... 1

Chapter 85,
    Heading 8529 ........................................................................................................21

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................... 1

*Avenues in Leather, Inc. v. U.S.*,
    423 F.3d 1326 (Fed. Cir. 2005) .............................................................................13

*Camelbak Products, LLC v. U.S.*,
    649 F.3d 1361 (Fed. Cir. 2011) ......................................................................3, 4, 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................... 1

*Deckers Corp. v. U.S.*,
    752 F.3d 949 (Fed. Cir. 2014) ........................................................................11, 12

*Len-Ron Mfg. Co. v. U.S.*,
    334 F.3d 1304 (Fed. Cir. 2003) .............................................................................13

*Otter Products, LLC v. U.S.*,
    834 F.3d 1369 (Fed. Cir. 2016) ................................................................6, 13, 17

*Outer Circle Prods. v. U.S.*,
    590 F.3d 1323 (Fed. Cir. 2010) ........................................................................11, 12

*R.T. Foods, Inc. v. U.S.*,
    757 F.3d 1349 (Fed. Cir. 2014) .........................................................................4, 5

*SGI, Inc. v. United States*,
    122 F.3d 1468 (Fed. Cir. 1997) ....................................................................11, 12, 13

*Totes, Inc. v. U.S.*,
    69 F.3d 495 (Fed. Cir. 1995) ...............................................................................13

**Federal Rules**

Federal Rules of Evidence
  Rule 703 ......................................................................................................................... 17

United States Court of International Trade
  Rule 56 ............................................................................................................................. 1

**Other Authorities**

Explanatory Notes to the Harmonized Tariff Schedule
  EN 42.02 .......................................................................................................................... 13

*Focal Encyclopedia of Photography*
  (3rd ed. 1993) .................................................................................... 10, 11, 17, 18

Plaintiff, GoPro, Inc. ("Plaintiff" or "GoPro"), has demonstrated that no genuine dispute exists as to any material fact that requires trial of this test case within the meaning of USCIT Rule 56 and the scope of *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and their progeny. This dispute is therefore a matter of legal interpretation, which should be resolved through summary judgment.

## I.    INTRODUCTION

In its combined cross-motion and opposition to Plaintiff's motion for summary judgment ("Def. Brief"), Defendant claims that a GoPro **"camera housing"** (Pic. 1) should be classified in subheading 4202.99.9000, HTSUS, as a **"camera case"** (Pic. 2).





**Pic. 1.** Pl. Comp. Ex. A1-5, **GoPro Camera Housing –** principally used with a GoPro action camera during active filming.

**Pic. 2** Pl. Comp. Ex. A6, the **GoPro CASEY Camera Case –** principally used to store, transport, carry, and organize action cameras and its accessories.

The government has failed to provide evidence to support judgment in its favor.[1]  The government concedes many of GoPro's factual statements, fails to reconcile uncontroverted expert testimony, ignores applicable legal authorities, and fails to offer evidence to rebut, or to even address, many of the factual and legal statements in GoPro's motion ("MSJ").

Plaintiff has supported its motion for summary judgement with both law and fact. Federal Circuit precedents establish that any exemplar of heading 4202 (including the *eo*

---

[1] *See* Plaintiff's Evidentiary Objections to Evidence Proffered by Defendant ("Pl. Evid. Obj."), filed concurrently herewith.  *See also* Plaintiff's Reply to Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("Pl. Reply SUMF"), filed concurrently herewith.

*nomine* provisions) must possess each of the four essential characteristics (that unite all exemplars, *ejusdem generis*). These characteristics are that the travel good stores items (such that they are "put away" from use), and that while stored, the travel good also transports, protects, and organizes multiple items within.

Consistent with such precedents, the undisputed expert testimony confirms that the common commercial meaning of the named term "camera cases" describes goods that store, transport, protect, and organize cameras with their accessories, all while *not in functional use*. Moreover, it is uncontroverted that both the expert testimony and the lexicographic materials distinguish "camera cases" from functional "housings."

In terms of storage, Federal Circuit precedent establishes that if a good allows for the full function of its enclosed product, then it is not engaged in the activity of "storing."  It is undisputed that the Camera Housings do interface with the HERO action cameras such that the cameras remain *fully functional*.

In terms of carrying, the undisputed facts are that the Camera Housings lack carrying handles – and any optional handles (mounts) which might be applied after purchase are for the purpose of filming (not to facilitate transport during storage).

In terms of organization, the undisputed facts are that the Camera Housings enclose a single GoPro HERO action camera for the stated purpose of action camera photography.  It is undisputed that the optional BacPac battery or LCD screen are functional parts that attach to the camera, and sold with their own storage cases.   It is undisputed that the optional anti-fog desiccant strips are inserted only for active filming and are sold with their own storage cases. Therefore, the Camera Housings do not serve the purpose of organizing multiple items for storage.

In terms of protection, the undisputed facts are that the Camera Housings are themselves subject to damage, and therefore do not "protect" the HERO action cameras in the same manner as camera cases.

Importantly, Federal Circuit precedent provides that if the character of an article is substantially different from a named exemplar, then that article will not lie within the "all iterations" umbrella of the named (*eo nomine)* provision—even if the article might also meet all of the *ejusdem generis* criteria.  The *Camelbak* hydration packs are an example of this principle.  The hydration packs strapped to a user's back function similarly to "backpacks" (*eo nomine* term in the heading), with a similar ability to store, carry, etc.  However, because their character includes a hydration pack, the Federal Circuit determined the hydration packs were substantially different in character—as they are meant to not only store and carry water, but also to actively function in dispensing water to the user.  Likewise, the character of the Camera Housing is substantially different from a camera case, because it integrates with the camera controls, the camera lens, and the camera heat sink, in order to accomplish videography in dynamic environments.  This unique character not only allows for full functionality of the camera, but also enhances the functionality of the camera.  The Camera Housings are therefore substantially different from the principal character of camera cases (which will merely store goods when not in active use).

Viewing the undisputed evidence in relation to the statutory language, applicable precedent, the lack of deference owed to CBP,[2] and the undisputed nature of the products at issue, it is clear that the Camera Housings are neither *eo nomine* "camera cases," nor "other similar containers," and thus do not fall within the heading 4202, HTSUS.  Accordingly, Plaintiff's motion for summary judgment should be granted, and the government's cross-motion denied.

---

[2] In its brief, the government does not contend that it is entitled to deference.

3

## II.   UNDISPUTED FACTS ESTABLISH THE SUBJECT CAMERA HOUSINGS ARE NOT CLASSIFIABLE IN HEADING 4202, HTSUS

### A.   The Government Does Not (And Cannot) Dispute That Camera Housings Are Principally Functional

It is uncontroverted that the Camera Housing is principally functional in nature.  *See* **SUMF 14** and **US-14**.  The Camera Housing provides a functionality which the GoPro HERO action cameras lack on their own.  The Camera Housing merges with the camera controls, camera lens, and camera heat sink, and GoPro's system of mounts to allow for "action camera" photography in extreme action environments.  The HERO action camera retains its normal functionality when placed into the Camera Housing; in addition, the Camera Housings make the cameras more functional by facilitating the action camera photography (*e.g.*, by the ability to film underwater, from the outside of a flying airplane, from the helmet of a skydiver, or from the fairings of a motorcycle).

The government argues that because the Camera Housings could be put to a fugitive use (as a protective storage device) they automatically fall within the scope "camera case"——simply because the named provision encompasses "all iterations."  The government's position is overbroad and untenable.

Federal Circuit authority affirms that *eo nomine* terms (*i.e.*, "camera cases") do not extend to encompass items of a substantially different character.  *See Camelbak Products, LLC v. U.S.*, 649 F.3d 1361 (Fed. Cir. 2011) ("*CamelBak*"), where the principle character of hydration backpacks was not *eo nomine* "backpacks" precisely because of their unique functionality.  The Federal Circuit elaborated on the principle in *R.T. Foods*:

> However, "when an article 'is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—**and the difference is significant**,' **it is not properly classified within an eo nomine provision."** CamelBak Prods., 649 F.3d at 1365 (emphasis added) (quoting Casio, Inc. v. United States, 73 F.3d 1095, 1097 (Fed. Cir. 1996)). To determine whether such a difference is significant enough to remove an article from an eo nomine provision, this court has looked to " 'whether the item possess[es] **features substantially in excess** of those within

the common meaning of the term,' " or whether the subject article is "a change in identity of the article described by the statute." Id. (alteration in original) (citations omitted).

*R.T. Foods, Inc. v. U.S.*, 757 F.3d 1349, 1354 (Fed. Cir. 2014) (emphasis added).

As was stated in *CamelBak*, "[i]n order to determine whether the subject article is classifiable within an *eo nomine* provision, we look to whether the subject article is merely an improvement over or whether it is, instead, a change in identity of the article described by the statute." *CamelBak*, 649 F.3d at 1365.

It is undisputed that the Camera Housings possess a mounting system, lens assemblies, heat-sinks, spring-loaded buttons, etc., all of which are functional features that interact with the HERO action cameras. This functionality is neither required of, nor present in, a "camera case." To the contrary, a "camera case" is intended to store cameras (with accessories) when those cameras are not in use. In this respect, the camera housings and camera cases are entirely dissimilar.

**B.    The Government Fails To Show That The Camera Housings Are Principally For Storage, Protection, Transport, And Organization**

The record evidence does not support the government's assertion that the Camera Housings meet the Federal Circuit requirements of heading 4202 exemplars, since not one of the four criteria can be satisfied.[3]

1.    Storage

It is uncontroverted that the Camera Housings are designed for functional purposes—they are made to interact directly with the GoPro HERO action cameras to accomplish action photography in extreme environments. The action camera remains fully functional (and more) while enclosed in the housing; the Camera Housings are therefore disqualified from classification within heading 4202. In *Otter Products, LLC v. U.S.*, 834 F.3d 1369, 1376 (Fed.

---

[3] The government's reliance on dictionary definitions of "organize," "store," and "carry" is misplaced. *See* Pl. Evid. Obj. Federal Circuit precedent has supplied the definitions in the context of heading 4202, Harmonized Tariff Schedule of the United States ("HTSUS").

Cir. 2016) ("*Otter Products CAFC*"), the Court determined that the Otterbox smart phone cases

(which allow users to operate their cell phones while enclosed) did not demonstrate a "storage"

function.  In *Otter Products* cases, both the CIT and the Federal Circuit reasoned that the cell

phone case which facilitates the function of the phone is not "storing" the phone (the act of

putting an item away),[4] and functionality is therefore inconsistent with the scope of heading

4202.

> The Court of International Trade found that, although the subject cases protect, they do not organize, store, or carry. Next, the Court of International Trade agreed with OtterBox that the exemplars in Heading 4202 have another characteristic that the Commuter and Defender Series **cases do not share: "the inability to use items when inside those containers."** *Id*. at 1292. While the listed examples "are not ones which permit the use of the enclosed item," the electronic devices enclosed by the subject merchandise **"retain their full, 100 percent functionality while inside an *OtterBox* case."** *Id*. (citation and internal quotation marks omitted). Accordingly, **the fact that the electronic device remains fully functional is inconsistent with objects enclosed by the exemplars listed in Heading 4202.**

*Otter Products CAFC,* 834 F.3d at 1374 (citing *Otter Prods., LLC v. U.S.*, 70 F.Supp.3d 1281 (2015)) (emphasis added).

The Federal Circuit then affirmed the CIT decision that functionality is inconsistent

with "storage" as follows:

> The government's argument conflates protection and storage, but they are different. Satisfying the former is not the same as satisfying the latter. As the Court of International Trade correctly found, "an important characteristic of the subject cases is allowing the electronic device to remain fully functional, so that it may be used while inside the subject case." *Otter Products*, 70 F.Supp.3d at 1290. **We agree that because the devices remain fully functional, the cases do not comport with the common understanding of the term "storing."**

*Id*. at 1380 (emphasis added).

---

[4]  As summarized by the Federal Circuit, quoting the CIT, "[T]he common understanding of 'store' implies setting something aside—'[i]t **does not include present use** but looks toward using whatever item is stored in the future.'"  *Id*. at 1379-80 (quoting *Otter Prods.*, 70 F.Supp.3d at 1290) (emphasis added).

2.     Protection During Storage

It is axiomatic that the "travel goods" of heading 4202, HTSUS, are designed to withstand the wear and tear of travel without compromising their storage function. However, this is not true with regard to the Camera Housings.

The uncontroverted expert testimony establishes that that the optically-coated lens assemblies of the Camera Housings can be damaged, rendering the GoPro action camera system unusable. *See* Pl. Reply SUMF 36, 37. The government argues for the possibility that users might elect to separately purchase lens covers so as to protect their devices (Def. Brief at 34)—but of course, the government well understands this is not how product is entered and sold.[5] *See* Pl. Reply SUMF 36-38. Further, the government's call for third-party protective options only serves to highlight the real need to protect the Camera Housings—a need which GoPro addressed via its CASEY camera case products.

Further, it is uncontroverted that the spring-loaded buttons of the camera are only designed to resist water-pressure; they can easily be inadvertently activated if the housing is used as a primary storage solution. An inadvertent button press might power the camera on, leading to a dead battery. Alternatively, other random button presses might fill the flash memory, or lead to the deletion of footage, or change important mode settings. Allowing the deletion of camera footage is, of course, the antithesis of "protective" storage. It is further uncontroverted that the buttons themselves may foul due to the accumulation of grit and grime.

---

[5] Plaintiff therefore offers the additional conjecture along this line of thought by suggesting that perhaps users could also purchase additional chain-mail armor to put around these Camera Housings—or perhaps more realistically, users might purchase an actual "camera case," such as the GoPro CASEY camera case, so that the camera, housings, cables, and accessories can all be stored, carried, organized, and protected.

In arguing simply that the buttons of the Camera Housings are designed to "resist depression," the government ignores the importance of record testimony which establishes that the housing is not an adequate protective storage solution.  *See* Pl. Reply SUMF 38.

Since the Camera Housings do have a delicate lens assembly, exposed buttons, and are sensitive to drop, dirt and grime, they too require protection—which is why the GoPro CASEY camera case (and many other third-party camera cases) for the GoPro action camera system have been developed.  *See* SUMF 47.

The Camera Housings are substantially unlike the GoPro CASEY camera case and other "camera cases" within the class of "travel goods."

### 3. Transport

It is uncontroverted that, unlike the exemplars of heading 4202 (including luggage and camera cases), the Camera Housings do not possess carrying handles.

The government argues that separately purchased selfie-sticks could be used as handles—again well aware that the Housings are not entered or sold with such selfie-sticks. *See* Pl. Reply SUMF 11; *see also* Pl. Evid. Obj.  Again, the government's resort to optional modifications only serves to highlight that the housings are not themselves designed for transport during storage.  Moreover, selfie-sticks do not transport a device during storage, but rather, as the name suggests, their purpose is to facilitate taking "selfies."

The government also argues that a wrist housing's Velcro strap somehow performs the function of "carrying" during storage.  This is incorrect since testimony establishes that the purpose of the wrist strap is as an integrated mount connecting the HERO action camera to body parts or equipment during hands-free video capture (*i.e.*, not for transport during storage). *See* Pl. Reply SUMF 23.

It is self-evident that while photographers may "carry" a camera on a selfie-stick or wrist strap during the activity of photography, such devices are designed to facilitate

photography and are not of the same class/kind as "travel goods" which are items designed around storage. To accomplish storage, the cameras and their accessories are put into protective travel goods (*i.e.*, an item of luggage) like a backpack, a suitcase, or a camera case. If the storage solution is, for example, a CASEY camera case, the goods are protected and the CASEY camera case falls squarely within the scope of heading 4202. The Camera Housing does not.

4.   <u>Organization</u>

It is undisputed that the Camera Housings enclose a single GoPro HERO action camera. *See* SUMF 16, US-16. The parties agree that the Camera Housings can also accommodate an optional (1) BacPac Battery, (2) BacPac LCD screen, or (3) anti-fog desiccant strip.

The government does not controvert that the BacPac Battery and BacPac LCD screen modulars attach to and merge with the action camera before being placed into a housing. Hence, even with the back screen or battery the Camera Housing only contains one camera. *See* Pl. Reply SUMF 31.

The government does not dispute that the desiccant strips are functional for action photography and are not designed for storage. *See* Pl. Reply SUMF 30. The government cannot credibly dispute that the anti-fog desiccant strips are not in the camera for organizing but to functionally position where they would be most effective in dissipating moisture buildup during filming. *Id*.

Hence, there are no items "organized" within the Camera Housings for the purpose of storage.

9

C.     The *Focal Encyclopedia* Establishes That A "Camera Case" Is Different
       From A "Housing"

     1.     The *Focal Encyclopedia* Establishes that "Camera Cases" Do Store,
       Transport, Protect, and Organize

The *Focal Encyclopedia of Photography* (3rd ed. 1993) at pp. 90-91 (Pl. Ex. P.),

provides that "camera cases" do satisfy the four criteria of storage, transport, protection, and

organization: the "camera cases" (i) are for the storage and transport of a camera with its

associated equipment; (ii) are designed to hold additional lenses, film, and an exposure meter

or other camera accessories in addition to one or more cameras; (iii) come with adjustable

compartments to organize equipment and accessories; (iv) come with carrying straps; and

(v) have padding for protection against damage from dropping or other physical abuse.  The

government's focus on a singular word "container" as a definition of a "camera case" [Def.

Brief at 18] simply ignores the above factors.  *See* Pl. Evid. Obj.  The government's unduly

broad position that any item which "contains" and is used with a camera constitutes a "camera

case" is not supported by any legal authority or evidence.  The government's preferred

definition would lead to irrational results.  With no limit to the heading 4202 provision's reach,

"a Ziploc bag could also be a camera case."  *See* Def. Ex. 4 Russell 2022 Dep at 114.

Further, the government is incorrect that the *Focal Encyclopedia* supports any "uses"

of the camera case. The government places emphasis on the definition of "camera case" as

"being stored, transported, and **used, especially in the field.**"  Def. Brief at 19 (emphasis in

original). The government incorrectly applies this definition, however, by failing to distinguish

between use as a "camera case" and use with a camera as a camera housing.

Of course, camera cases are "used" in "the field"—but obviously only for the purposes

stated in the definition: to store, protect, organize, and carry cameras and equipment. It is

disingenuous to claim that the definition encompasses non-storage uses inclusive of the

facilitation of action camera photography.  Such a reading of this definition would effectively undermine the multiple precedents set forth by the Federal Circuit.

2.      The *Focal Encyclopedia* Distinguishes "Camera Cases" from "Underwater Housings"

In relation to underwater photography, the *Focal Encyclopedia* specifically distinguishes waterproof "housings" from "camera cases" by separately describing a waterproof housing which allows for operation of the conventional camera while under water. Pl. Ex. P. at p.86.  MSJ at 15, 16.  Conspicuous in its absence is the government's response to this specific distinction.

## III.    GOVERNMENT'S REBUTTAL ARGUMENTS LACK MERIT

### A.    Government Is Incorrect In Stating That That *Ejusdem Generis* Factors Are Inapplicable To The "Camera Case" Provision

The government urges the Court to determine that a camera case is anything that covers a camera without any evaluation of the four essential characteristics unifying the named exemplars in heading 4202, HTSUS, as have been set out by the Federal Circuit. These assertions are not only unsupported by any legal authority, but also contradict numerous Federal Circuit precedents analyzing *eo nomine* provisions within heading 4202, including backpacks, attaché cases, vanity cases, bottle cases, binders, etc.

Specifically, in stating that "GoPro is under mistaken belief that to be *eo nomine* 'camera cases' the camera housings would also need to store, organize, transport, and protect cameras under an *ejusdem generis* analysis . . ." [Def. Brief at 28, *see also* n.9], the government ignores *Deckers Corp. v. U.S.*, 752 F.3d 949 (Fed. Cir. 2014) ("*Deckers*") [MSJ at 16], as well as many other Federal Circuit decisions, e.g., *SGI, Inc. v. United States*, 122 F.3d 1468 (Fed. Cir. 1997) ("*SGI*"), and *Outer Circle Prods. v. U.S.*, 590 F.3d 1323 (Fed. Cir. 2010) ("*Outer Circle*").

11

*Outer Circle* is instructive since it addressed the effect of *ejusdem generis* on the named exemplars listed in a tariff provision. In *Outer Circle*, the issue before the court was whether certain soft-sided coolers were classified as *eo nomine* "bottle cases", in heading 4202. *Outer Circle*, 590 F.3d 1323.  In determining the proper scope of heading 4202, the Federal Circuit stated it had previously addressed this issue in *SGI*.  In *SGI,* the Federal Circuit applied the doctrine of *ejusdem generis*, and held heading 4202 does "not include containers that organize, store, protect, or carry food or beverages."  Therefore, under *SGI*, if a container involves food or beverages, it cannot be classified in heading 4202, HTSUS.  Based upon the holding in *SGI*, *Outer Circle* held that the coolers at issue could not be classified in heading 4202, HTSUS, because they involved food or beverages.  *Outer Circle*, 590 F.3d at 1326.  In so holding, the Federal Circuit stated:

> The Court of International Trade attempts to distinguish *SGI* on the ground that the *ejusdem generis* analysis in *SGI* is ill-suited to this case because the term "bottle cases" is an *eo nomine* provision under HTSUS heading 4202. *SGI*, however, explicitly analyzed the *eo nomine* exemplars and found that "none of the exemplars under subheading 4202.92.90 involves containment of any food or beverage." 122 F.3d at 1472. *SGI* is controlling in this case.

*Id*.

Similarly, in *Deckers*, which involved the issue of classification of certain sport sandals, the importer argued that an *ejusdem generis* analysis of a tariff classification subheading is not applicable to an *eo nomine* analysis of a listed exemplar within the same subheading.  *Deckers*, 752 F.3d at 956.  The government opposed, citing to *Outer Circle* and *SGI*, stating that prior *ejusdem generis* analysis of a subheading informs a later court's construction of a named exemplar under an *eo nomine* analysis.  *Id*. at 955, 957.  The Federal Circuit agreed, reasoning that an *ejusdem generis* analysis informs the scope and common meaning of each of the listed exemplars in an HTSUS subheading to establish congressional intent.  *Id*. at 957, 958.  This principle is obvious because just as the list of exemplars helps, *ejusdem generis*, to define the

residual term ("and the like"), each exemplar is itself recognized, *noscitur a sociis*, via context to their partner terms.

There are numerous Federal Circuit cases that have conclusively determined the essential unifying features of heading 4202, HTSUS (*i.e.*, storage, organization, transport, and protection), encompassing both specific exemplars and containers "similar to" those exemplars. *See SGI*, 122 F.3d 1468, *Totes, Inc. v. U.S.*, 69 F.3d 495, 498 (Fed. Cir. 1995); *Len-Ron Mfg. Co. v. U.S.*, 334 F.3d 1304, 1313 (Fed. Cir. 2003), *Avenues in Leather, Inc. v. U.S.*, 423 F.3d 1326, 1332 (Fed. Cir. 2005) (quoting *Avenues in Leather v. U.S.*, 317 F.3d 1399, 1402 (Fed. Cir. 2003)); *Otter Products CAFC,* 834 F.3d at 1376 (Fed. Cir. 2016). MSJ at 16, 17.

In short, when the Federal Circuit identified the four *ejusdem generis* factors, it was because each specific exemplar (whether *eo nomine* or not) exhibited those *ejusdem generis* factors. To be an *eo nomine* "camera case" listed in heading 4202, therefore, the Camera Housing must also store, organize, transport, and protect.

### B. The Government Incorrectly Asserts The Explanatory Notes Provision For "Camera Accessory Cases" Impacts The Classification Of The GoPro Camera Housings

#### 1. The Explanatory Notes Are Inapplicable

The government cites the Explanatory Notes (EN) where they reference "camera accessory cases" [Def. Brief at 25]:

> The expression "similar containers" in the first part includes hat boxes, **camera accessory cases**, cartridge pouches, sheaths for hunting or camping knives, portable tool boxes or cases, specially shaped or internally fitted to contain particular tools with or without their accessories, etc.

EN 42.02 (emphasis added).

This sentence refers to travel goods designed to store and protect **accessories**, such as lenses, filters, mounts, etc., but not cameras.  The provision is therefore irrelevant to the classification of the GoPro Camera Housings and GoPro's CASEY camera cases which both interact with GoPro action cameras.

The government attempts to apply the EN (while ignoring the Federal Circuit precedents) by stating:

> As an initial matter, the EN states that both "camera cases" and "camera accessory cases" may be rigid containers made of any material. As discussed above, GoPro's housings are rigid, made from plastic, and the **ENs confirm that such rigid plastic containers designed to enclose cameras are within the *eo nomine* "camera case" provision of heading 4202.** Thus, not only does GoPro's polycarbonate protective camera housings for action cameras fall within the common meaning of "camera cases," i.e. a container designed to hold and protect a camera, **but the ENs provide further support that the camera housings at issue are classified as "camera cases."**

Def. Brief at 26 (emphasis added).

Beyond stating that an article of 4202 may be made from either rigid (or soft) plastic, the EN do not provide any further endorsement of the government position as to the common meaning of "camera case."

The government asserts that the GoPro CASEY is not a "camera case" because it organizes accessories.  Def. Brief at 26-27.  The government incorrectly characterizes the relevance of GoPro's CASEY camera case as a "camera accessory case."

The government admits that CASEY camera case is designed to contain GoPro cameras, but argues that CASEY is not a "camera case," but rather a "camera accessory case."

The EN provision for "camera accessory case" refers to similar travel luggage designed for camera accessories (such as lenses, filters, and the like), but which does not contain cameras. This intent is made obvious by the accompanying provisions, which exemplify how heading 4202 should be to extended to cover similar types of luggage (despite the fact that these items may not have been specifically listed by the exemplars):

- Hat boxes
- Camera Accessory Cases
- Cartridge pouches
- Sheaths for hunting or camping knives,
- Portable tool boxes or cases, specially shaped or internally fitted to contain particular tools with or without their accessories

14

2.    <u>The Government Misstates GoPro Expert's Deposition Testimony</u>

The government asserts that Mr. Russell, GoPro's expert witness, "identified the CASEY as a 'camera accessory case.' Def. Ex. 4, Russell 2022 Dep. at 20, 105." Def. Brief at 27. The government misstates Mr. Russell's testimony. Mr. Russell did not identify CASEY as a camera accessory case; he stated that CASEY "holds accessories for a camera." Mr. Russell maintained that a camera case is designed and marketed to protect, store, transport, and organize GoPro's cameras **and** their accessories. In fact, Plaintiff's expert explicitly referred to specific storage solutions for GoPro's BacPacs as to "camera accessory cases," clearly distinguishing them from "camera cases," which fact the government omits.

> By Mr. Kenny:
> Q. Mr. Russell, you were describing what you were doing for GoPro, and then your counsel handed me this physical exhibit that's been marked Exhibit 43 [**Pl. Ex. A6**, **CASEY Camera Case**]. Do you want to describe what this is and how it relates to what you were discussing.
>
> A. Absolutely. So Casey is our dedicated camera case for --
>
> Q. And that's what's been marked as Exhibit 43?
>
> A. -- GoPro cameras and --
>
> Q. Is that what's been marked as Exhibit 43?
>
> A. Oh, sorry. It's been marked at Exhibit 43. Sorry to talk over you.
>
> Q. Is the -- is what?
>
> A. **Is Casey, the GoPro camera case**.

Def. Ex. 4 Russell 2022 Dep at 20 (emphasis added).

> By Mr. Kenny:
> Q. Could the item that is Exhibit 43 [CASEY camera case] be described as a camera accessory case?
>
> A. Exhibit 43 **holds accessories for a camera**. Yeah.

Def. Ex. 4 Russell 2022 Dep at 105 (emphasis added).

> By Mr. Kenny:
> A. The one that we were just reviewing was an LCD Touch BacPac.
>
> Q. **Is that an accessory, a camera accessory?**

A. **The LCD Touch BacPac is a camera accessory.**

Q. Okay. And is this a camera accessory – is one of the things that's included a camera accessory case?

A. **The protective case for the LCD Touch BacPac,** yes, was included in that SKU.

Q. **So that would be a camera accessory case?**

A. **Sure.**

Q. Does that camera accessory case hold anything else, other than the BacPac?

A. It is not designed to hold anything else besides the BacPac.

Def. Ex. 4 Russell 2022 Dep at 130 (emphasis added).

In cherry-picking from deposition, the government glosses over the importance of the hours-long conversation in which Mr. Russell explains his extensive expertise in luggage and cases.  Def. Ex. 4 Russell 2022 Dep at 11-18.  Mr. Russell testifies that in earlier years, GoPro had no adequate storage solution for its products, and therefore its users relied on third-party cases as storage solutions.  *Id*. at 12.  Mr. Russell describes how he designed and developed one of the first award-winning "camera cases" for GoPro action cameras and accessories while he worked for the Swedish storage case company, Thule.  *Id.* at 12-13.  Mr. Russell was then recruited by GoPro to create GoPro's current storage solution, the CASEY camera case.  *Id*. at 13.  Mr. Russell himself was involved in the design of the CASEY line of "camera cases," which he testifies are specifically designed to store GoPro's HERO action cameras together with parts and accessories.  *Id*. at 19-23, 123.

It is inaccurate to state the CASEY is only designed as a "camera accessory case" because the CASEY stores GoPro cameras, GoPro camera housings, other camera parts, and other camera accessories as well.

Plaintiff presents the CASEY camera case for the purpose of showing that the subject Camera Housings were never *designed*, *marketed*, or *intended* to be a storage solution for GoPro's action cameras.

16

### C.    The Government Is Incorrect That Expert Testimony Must Show "Uniform" Commercial Meaning

Uncontroverted expert testimony demonstrates that the *Focal Encyclopedia*'s definition of "camera case" is consistent with the common use of the term in modern commerce.  The modern camera industry recognizes a "camera case" as involving four elements: it must protect, store, organize, and transport a camera/cameras and their parts, and/or common accessories (*i.e.*, lenses, filters, flashes, lens cleaners).  SUMF 39, 40.  Uncontroverted expert testimony demonstrates that, unlike camera cases, the Camera Housings would not be considered organizational or storage solution by any of the commercial retail environments GoPro sells in. SUMF 35.[6]

The government is incorrect that the Plaintiff is required to show a "uniform application" throughout commerce.  Def. Brief at 25, fn. 6.  This would only be required if, as the government itself acknowledges, the Plaintiff were attempting to establish a commercial meaning that *differs* from an established common meaning.  *Id*.  In fact, the common and commercial meanings are presumed to be the same.  *See, e.g.*, *Otter Products CAFC*, 834 F.3d at 1375.  MSJ at 10.  Evidence of commercial meaning is therefore appropriate evidence which a court may examine to inform on how "common meaning" is interpreted from varying lexicographic materials.

The uncontroverted expert testimony demonstrates that the commercial meaning of "camera case" is consistent with the common meaning. Both the expert and the *Focal Encyclopedia* state that "camera cases" are used principally for storage, transport, protection,

---

[6] In its Responses to Plaintiff's Statement of Undisputed Material Facts, par. 35, the government objects to GoPro's expert testimony regarding marketing channels based on hearsay. The government's objection lacks merit and should be disregarded. *See* FRE 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."). *See also* Pl. Reply SUMF 35.

and organization.  Further, both the expert and the *Focal Encyclopedia* draw a distinction between "camera cases" for storage and functional underwater housings.

### D.    Certain Of Defendant's Proffered Exhibits Are Irrelevant, Misleading And Lack Foundation

The government proffers, without proper foundation/authentication, "Cannon Advertising Copy for the AW-DC30 **All Weather Case**."  Def. Brief at 24; Def. Ex. 14 (emphasis added).  No credible evidence is provided that this article is, or is not, a "camera case." The government likewise proffers, without proper foundation/authentication, a "**Waterproof case**" sold by the Akaso company (*id*., Def. Ex. 15) (emphasis added), likewise without any evidence that this article is a "camera case."  *See* Pl. Evid. Obj.; *see also* Pl. Reply SUMF 39, 40. None of the featured advertising copy (improperly) proffered by the government describes the products as "camera cases."  (Def. Ex. 15's title, "AKASO Camera Case Advertising Copy," is particularly misleading in this regard.)  None of the featured advertising copy (improperly proffered) by the government mentions that the product is intended as a storage or organizing solution, or protection against drop, bump, and scratch.  The evidence proffered by the government does not in any way controvert the expert testimony regarding the commercial meaning of "camera case."  The government also omits that these items were presented consecutively to GoPro's expert during his deposition, at which time Mr. Russell explained why each of these items were not consistent with the industry term "camera case." *See* Def. Ex. 4 Russell 2022 Dep at 65, 70-72. Accordingly, these exhibits should be stricken from the record.

The government also improperly proffers and describes various exhibits as "35 mm camera cases."  Def. Brief at 22.  The undisputed testimony of GoPro's expert is that Government Exhibits 11A to 11C would not be considered "camera cases" under current industry standards (for a variety of reasons).  Def. Ex. 4 Russell 2022 Dep at 97-104.  The

government has offered no evidence of its own to contradict the expert testimony to establish that these items are "camera cases."

The government offers no foundation for these items, nor has the government established that these non-functional items are relevant to the analysis of the *functional* camera housings at hand.  These items do not appear to possess heat sinks, lens assemblies, or spring-loaded buttons. They do not appear to add operational functionality which facilitates photography, nor do they allow operation of the camera without first opening the case. Accordingly, these exhibits should be stricken from the record.  *See* Pl. Evid. Obj.

Further, the government points to GoPro's use of the term "Waterproof Case."  Def. Brief at 23, 24; Def. Ex. 12.  Government Exhibit 12 contains  **a single instance** of the GoPro's use of the term "waterproof case" in connection with the waterhousing for HERO 9 and HERO 10 action cameras, which are not at issue in this test case.  In addition to being irrelevant, the government's use of Def. Ex. 12 is misleading in that the website description does not contain the term "camera case."  Accordingly, this exhibit should not be admitted.  *See* Pl. Evid. Obj.

The government also ignores the uncontroverted expert testimony that explains that this single instance use was created by a search engine optimization team (SEO), to test SEO keywords for "hits," without approval by the product management and marketing teams, whereas packaging of the product did not include the said description.  *See* Def. Ex. 4 Russell 2022 Dep at 36-37, 58, 59:

> By Mr. Kenny:
> Q. So you were saying that there's an understanding among commercial people or, perhaps, consumers as to what camera cases is; correct?
>
> By Mr. Russell:
>
> A. Correct.
>
> Q. Okay. And if that's the case, then, it -- would GoPro describe in their materials, when they use the term "cases," would they be following the same ideas as what you're espousing in your report as to the common commercial meaning?

A. Yes. With the one exception, which we've already talked about, which was, I believe, on one of the products currently offered on our website, the SEO, the search engine optimization team, for our e-com website, changed the product name to include the word "case" on the end, which is not an approved usage. It wasn't approved by us or the marketing team. They did it on their own. And it is not -- that one example is not representative of a larger definition of how we categorize camera cases.

\* \* \*

A. So if you buy this product off the shelf, if you go to one of our retailers and buy it the shelf, it is   called the HERO10 and 9 Protective Housing, not Protective Housing Plus Waterproof Case. And the approved marketing name is what goes on the packaging.

Moreover, the description has been since updated on GoPro's website and no longer uses term "waterproof case" (last accessed on November 6, 2022):



*See also* Pl. Reply SUMF 15.

This use of "waterproof case" cannot be equated to the invocation of the *eo nomine* named term "camera case"—as much as the government may wish to use these terms loosely and interchangeably when it suits its purposes.

## IV.    CONCLUSION

Based on the arguments set forth in this brief, its moving brief and related materials in support, Plaintiff respectfully requests that the Court enter summary judgment in its favor and determine that the GoPro camera housings at issue are not classifiable in heading 4202,

HTSUS, and are properly classifiable in heading 8529, HTSUS, or, alternatively, in heading 3926, HTSUS.

Plaintiff is not requesting oral argument on the pending summary judgment motions. However, if the Court continues to have questions after reading the submitted papers, and believes that a dialogue with counsel would be useful for a complete understanding of the issues presented, GoPro stands ready and willing to participate in an in-person oral argument at the Court's convenience.

Dated: November 9, 2022                                  Respectfully submitted,

                                                         /s/ Alena A. Eckhardt
                                                         Alena A. Eckhardt, Esq.
                                                         Matt Nakachi, Esq.
                                                         JUNKER & NAKACHI, P.C.
                                                         50 California Street, Suite 1500
                                                         San Francisco, CA 94111
                                                         (415) 498-0070
                                                         alena@tradelawcounsel.com
                                                         matt@tradelawcounsel.com
                                                         Counsel for Plaintiff, GoPro, Inc.

## CERTIFICATION OF COMPLIANCE

I, Alena A. Eckhardt, counsel of record for Plaintiff, GoPro, Inc., relying upon the word count feature of the word-processing program used to prepare Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, certify, that the pleading complies with the word count limitation of the Court's Chambers Procedures.   The pleading contains 5974 words, which does not include the tables.

Respectfully submitted,

/s/ *Alena A. Eckhardt*
Alena A. Eckhardt, Esq.
Matt Nakachi, Esq.
JUNKER & NAKACHI, P.C.
50 California Street, Suite 1500
San Francisco, CA 94111
(415) 498-0070
alena@tradelawcounsel.com
matt@tradelawcounsel.com
Counsel for Plaintiff, GoPro, Inc.

## CERTIFICATE OF SERVICE

Alena A. Eckhardt certifies that on November 9, 2022, she served a copy of the PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S EVIDENTIARY OBJECTIONS, PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS, AND PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS upon Defendant, via the U.S. Court of International Trade's CMF/ECF System, such that the Court's CMF/ECF System will cause the documents to be served electronically upon the following counsel:

Edward F. Kenny
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9230
Email: edward.kenny@usdoj.gov

*/s/ Alena A. Eckhardt*
Alena A. Eckhardt, Esq.