UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONONORABLE TIMOTHY M. REIF, JUDGE

_____

GOPRO, INC.,                                     :
                                                 :
                              Plaintiff,          :        Court No. 20-00176
                                                 :
                                                 :
                                                 :
UNITED STATES,                                    :
                                                 :
                              Defendant.          :
_____          :

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER
<u>SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIAL M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

AIMEE LEE
Assistant Director

EDWARD F. KENNY
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0480 or 9230
Attorneys for Defendant

Of Counsel:
Mathias Rabinovitch, Esq.
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND .......................................................................................................... 2

ARGUMENT ............................................................................................................... 4

I. THE SUBJECT MERCHANDISE IS CORRECTLY CLASSIFIED IN SUBHEADING 4202.99.90, HTSUS ..................................................................... 4

II. The Merchandise Falls Within An *Eo Nomine* Provision And An *Ejusdem Generis* Analysis Is Unnecessary ......................................................................... 9

    A. Resort to *Ejusdem Generis* is Unwarranted ................................................. 9

    B. Even If All Four *Ejusdem Generis* Factors Must Be Met For Classification In Heading 4202, The Housings at Issue Satisfy All Four Factors ..................... 13

III. The Explanatory Notes Distinguish Between Camera Cases And Camera Accessory Cases And Supports Classification Of The Imported Goods As *Eo Nomine* Camera Cases ............................................................................................................. 16

IV. GoPro and Other Retailers and Manufacturers Have Referred To Camera "Housings" and Camera "Cases" Interchangeably ......................................................... 17

V. The Court Should Disregard GoPro's Expert And Evidentiary Objections ......... 20

    A. GoPro's Employee Expert Is Unnecessary For The Relevant Common Meaning Analysis .................................................................................................. 20

    B. GoPro's Evidentiary Objections are Meritless ............................................ 22

CONCLUSION .......................................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*360heros, Inc. v. GoPro, Inc.*,
    Case No. 17-1302-LPS-CJB, 2019 U.S. Dist. LEXIS 185631 ............................... 18

*CamelBak Prod., LLC v. United States*,
    649 F.3d 1361 (Fed. Cir. 2011) ................................................................................ 7

*Carl Zeiss, Inc. v. United States*,
  195 F.3d 1375 (Fed. Cir. 1999)...................................................................5, 7, 20

*Casio, Inc. v. United States*,
  73 F.3d 1095 (Fed. Cir. 1996)..........................................................................8

*Deckers v. United States*,
  752 F.3d 949 (Fed.Cir.2014)..........................................................................10

*Jewelpak Corp. v. United States*,
  297 F.3d 1326 (2002)....................................................................................11

*Kahrs Int'l, Inc. v. United States*,
  713 F.3d 640 (Fed. Cir. 2013).........................................................................8

*Otter Products, LLC v. United States*,
  834 F.3d 1369 (Fed. Cir. 2016).............................................................11-14, 17

*Rohm & Haas Co. v. United States*,
  727 F.2d 1095 (Fed. Cir. 1984)....................................................................5, 21

*Rooster Products, Inc. v. United States*,
  24 C.I.T. 357, (Ct. Int'l Trade, 2000) .............................................................12

*SMS Audio, LLC v. Belson*,
  Case No. 16-81308-CIV, 2017 WL 1533971 (S.D.Fla, March 20, 2017)..............25

## Rules

FRE 401 ......................................................................................................22

FRE 602 ........................................................................................................9

FRE 801 ........................................................................................................9

FRE 901 ........................................................................................................9

USCIT Rule 30 ..............................................................................................25

## Harmonized Tariff Schedule of the United States

Heading 4202 ........................................................................................*passim*

  Subheading 4202.99.90.............................................................................1, 4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| _____ | : | |
| GOPRO, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00176 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER
<u>SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Defendant, the United States (the Government), submits this reply memorandum in opposition to plaintiff's, GoPro, Inc. (GoPro), motion for summary judgment and in further support of our cross-motion for summary judgment.

<u>**INTRODUCTION**</u>

As more fully set forth in our opening brief, this action involves the classification of eight models of GoPro Hero camera housings[1] which U.S. Customs and Border Protection (Customs) liquidated as entered in subheading 4202.99.90, Harmonized Tariff Schedule of the United States (HTSUS) as camera cases. Camera cases are *eo nomine* included in heading 4202 and the parties agree that the common meaning of camera cases controls. Unsurprisingly, the core features of a camera case include its ability to contain

---

[1] The models are the Super Suit; Camo Housing; Dive Housing; Wrist Housing; Standard Housing; Model No. 220-09315-000; Model No. 220-07892-000 and the Skeleton Housing. While technically eight model numbers are at issue in this case, two models, Model Nos. 220-09315-000, and 220-07892-000 are the same as the Standard Housing. *See* Pltf's Response to Def's Statement of Undisputed Material Facts ("Pl. Res SUMF") at response 26.

and enclose a camera.  The GoPro Hero camera housings at issue are meant to contain various models of GoPro Hero cameras and to protect the camera while being stored, transported, and used, thus satisfying the plain meaning of "camera cases."

GoPro's arguments to the contrary rest on a flawed legal analysis.  GoPro's attempt to distinguish its camera housings from camera cases ignores that an *eo nomine* designation includes all forms of camera cases including improved forms.  Not only is there no need to resort to *ejusdem generis* because the merchandise falls within camera cases *eo nomine* and is generally consistent with the exemplars of heading 4202, but GoPro is mistaken in its interpretation of Federal Circuit precedent that each of the heading 4202 characteristics of store, transport, protect, and organize must be met. Moreover, GoPro reads in an additional requirement that these characteristics must occur while the camera is not in functional use.  That is not a condition present in the definition of "camera case" and not one mandated by legal authority.

Accordingly, the correct classification of GoPro's merchandise falls within heading 4202 as camera cases.

## **BACKGROUND**

In addition to those facts discussed in our opening brief concerning each model of GoPro's housings which we do not repeat here, we emphasize that GoPro agrees with the following in its response to our moving papers:

- The camera housings at issue are designed, marketed, and used for "action camera photography" in which a user may actively film while engaging in extreme activities such as skydiving, surfing, deep-sea diving, motorcycling, skateboarding, skiing, off-roading, volcanology, etc. Pl's SUMF 10.

- GoPro designed and marketed its housings and mountings as an "action camera" system to go with its Hero line of cameras, allowing consumers to mount a small ruggedized and/or waterproofed housed camera to themselves or to equipment or a vehicle, enabling hands-free immersive recording of extreme activities in a way that traditional cameras or smartphones cannot.  Pl's SUMF 11.

- All GoPro camera housings at issue are form fitted to the Hero camera models for which they are designed to enclose and consist of a ridged plastic shell made of polycarbonate with a hardened flat glass over the section of the housing where the camera's lens assembly is situated.  Pl. Res. SUMF 1-23, 28.

- All Go Pro camera housings at issue, except for the Skeleton Housing, protect the Hero camera from water to a depth of either 40 meters or 60 meters, depending on the model. Pl. Res. SUMF 1, 2, 5-7, 10-11, 14-15, 18-19.

- All GoPro camera housings at issue offer protection for surface activities, as the housing is impact resistant, protecting the camera from flying dirt and debris or drops.  Pl. Res SUMF 1, 3, 5, 8, 10, 12, 15, 18, 19, 20, 23.

- The GoPro housings at issue, except for the Wrist Housing, incorporate the GoPro's two/three-finger mounting system.  Pl. Res SUMF 29.  Specifically, each housing is designed with two plastic "fingers" protruding from the housings' bottom, which allow for the use of what GoPro calls a thumb screw which pins and secures the housing to the corresponding three "finger" mounting neck of a GoPro "Quick Release Buckle."  Pl. Res SUMF 29.

- The two/three finger mounting neck and Quick Release Buckle allows the connection of the housing with any one of the assortment of GoPro conveyance

accessories such as GoPro selfie sticks or GoPro helmet mounts.  Pl. Res SUMF 29, 30.

- One of the housings, the Wrist Housing has a dedicated conveyance device, in that it incorporates a wrist strap, and the design incorporates a hinge feature on one edge of the housing body that allows the housing to quickly be lifted off the wrist strap when the diver wants to take a photo.  Pl. Res SUMF 29.

- To accomplish the action photography for which the GoPro Hero action cameras are designed, engineered, and marketed, the camera is enclosed in the camera housings which are mounted utilizing the two/three finger mounting system to any of the various types of specialized GoPro conveyance accessories (sticky mounts, chest mounts, wrist mounts, helmet mounts, car mounts, etc.) which cater to specific types of extreme activities.  Pl's SUMF 12.

- The earlier models of Hero action cameras (e.g., Hero 3, Hero 3+, Hero 4) are not waterproof, durable, or mountable by themselves, and need the camera housings with the GoPro mounts in order for the action camera to be used as intended in extreme/wet environments. Pl's SUMF 12-14.

For the reasons in our opening brief and below, summary judgment is appropriate here.  The physical attributes and function of the GoPro camera housings at issue are not in dispute and classification is a legal question for the Court to determine.

## **ARGUMENT**

### I. **THE SUBJECT MERCHANDISE IS CORRECTLY CLASSIFIED IN SUBHEADING 4202.99.90, HTSUS**

As explained on our opening brief, the GoPro camera housings are "camera cases" under heading 4202.  Heading 4202 provides for:

4

Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, insulated food or beverage bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper:

By its plain terms, this heading contains two sections, both of which include a list of named items immediately followed by the phrase "and similar containers." For purposes of this classification case, the first clause of heading 4202 contains the relevant named exemplar, *i.e.* "camera cases," under which the goods at issue are classified, such that the "and similar containers" language, although in the same clause, is not determinative of the classification question at issue.

The term "Camera cases" included in this tariff provision is an *eo nomine* reference to goods described according to their "common and commercial meaning." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). To ascertain the common meaning of a tariff term, like "camera cases" the Court may "rely upon its own understanding of the terms used" or consult lexicographic or other reliable sources to define the tariff term. *Id.* The common and commercial meaning are presumed to be the same and a party who argues that a tariff term should not be given its common or dictionary meaning must prove that it has a different commercial meaning that is definite, uniform, and general throughout the trade. *See Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed. Cir. 1984).

The lexicographic source both parties have embraced is the *Focal Encyclopedia,* which provides a definition of "camera case" as follows: A "camera case" comprises "a

container" that provides "protection" for the camera while it is "being stored, transported, and used, especially in the field." *See Focal Encyclopedia* at 90 (Pltf's Ex. P)[2]; Cross Motion Br. at 19.

GoPro's camera housings satisfy the common meaning of "camera cases" under the definition in the *Focal Encyclopedia* as discussed at length in our opening brief. GoPro's camera housings contain GoPro's action cameras and provides for protection of the camera as it is being stored, transported, and used to photograph extreme activities such as skydiving, surfing, deep-sea diving, motorcycling, skateboarding, skiing, off-roading, volcanology, etc.  Pl's SUMF 10.

GoPro attempts to distinguish its camera housings by asserting that "'camera cases' describe[] goods that store, transport, protect, and organize cameras with their accessories, all while *not in functional use*."  Pl. Resp. Br. at 2 (emphasis in original.) GoPro further asserts that its camera housings are "substantially different from the principal character of camera cases (which will merely store goods when not in active use)."  Pl. Resp. Br. at 3.  And even goes so far to say that "a camera case is intended to store cameras (with accessories) when those cameras are not in use."  Pl. Resp. Br. at 5.

First, there are no limitations to the term "camera cases" and the parties agree that the meaning of "camera cases" is defined in the *Focal Encyclopedia* which does not require non-use of the camera or that storage must be with accessories.  To the contrary, according to the *Focal Encyclopedia* definition, it is specifically contemplated that a

---

[2] The *Focal Encyclopedia*'s discussion of camera cases provides a general explanation of the functions of all camera cases in the first paragraph followed by a discussion of various examples of camera cases and their attributes in the subsequent paragraphs.  *See* Pltf's Ex. P.

camera case protects the camera while it is, among other things, being used.  The

definition in the *Focal Encyclopedia* provides for examples of different types of camera

cases with qualifying phrases like "usually provided," "some cases" and "many cases,"

such that the discussion shows the diversity of features of a camera case but does not

require that such feature must be present to be considered a camera case.  *See* Pltf's Ex.

P.

        One relevant example of a camera case that offers to illustrate this definition is the

35mm camera case.  This camera case is a leather or plastic container with a camera

retaining screw at the bottom to secure the camera and a front flap conforming to the

camera's lens which can be unsnapped and folded down so that it does not interfere with

the lens during active photo shooting.  It is apparent from the description of this type of

case, that the camera remains in its case even during active photography.  *See Focal*

*Encyclopedia* at 91 (Pltf's Ex. P).  Accordingly, that a camera is functional while

contained by the GoPro housing does not transform the housing into something other

than a camera case.

        Second, GoPro's camera housings fall short of being substantially different from a

camera case.  Pl. Resp. Br. at 4-5.  As an *eo nomine* provision, "camera cases" in heading

4202 "describes the merchandise by name."  *Carl Zeiss, Inc. v. United States*, 195 F.3d

1375, 1379 (Fed. Cir. 1999).  It is well-established that "[a]bsent limitation or contrary

legislative intent," an *eo nomine* provision "includes all forms of the named article, even

improved forms."  *CamelBak Prod., LLC v. United States*, 649 F.3d 1361, 1364-65 (Fed.

Cir. 2011).  In order to determine whether a product is merely an "improved form"

described *eo nomine* as opposed to a change in identity of the product, the Court

determines "whether the item possess[es] features *substantially in excess* of those within the common meaning of the term."  *Id*. at 1365 (quoting *Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1996) (emphasis in original)).  A product does not undergo a change in identity simply by "possess[ing] some unique features related to its intended use."  *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 646 (Fed. Cir. 2013).

While GoPro housings may be arguably improved, they are nonetheless *eo nomine* camera cases possessing all the features of a camera case as defined and are not substantially in excess of the meaning of "camera cases."  Undisputedly, the GoPro housings contain GoPro's Hero action cameras, and it is evident that a GoPro housing was specifically meant to protect the camera inside.  For example, GoPro admitted that the early Hero action cameras (*e.g.*, Hero 3, Hero 3+, Hero 4) were not waterproof, durable, or mountable by themselves.  GoPro therefore designed the camera housings at issue to provide protection for the camera and the mounting capability necessary for these early Hero action cameras (*e.g.*, Hero 3, Hero 3+, Hero 4) to be used as intended in mobile and extreme/wet environments.  Pl's SUMF 12-14.  Pl. Res. SUMF 1-3, 5-8, 10-12, 14-15, 18-19, 20, 23, 29 and 30.

Importantly, GoPro understood that its customers would use the camera housing for, among other things, storage and transport of its cameras and designed its product specifically to withstand the rigors of such storage and transport activities.  GoPro's design specifications for the Super Suit Housings (GoPro internal name Cousteau) which outline the features that make up and define the product, show that GoPro designed its housings to withstand storage and transport of a camera within the housing "in a bag with other abrasive objects" *i.e.*, exhibit no breakage, no damage just normal wear and tear.

8

*See* Def Ex. 10 at Intro, (GOPRO 008934), ¶ ID 7.3.5, ¶ ID 7.4.1 and ¶ ID 7.5.1 (GOPRO 008957-008958).  The housing's storage and transport functionality were priorities and essential features as denoted by "P0" in GoPro's specifications which meant that these were "must have features that would halt shipping if the product did not have these functionalities at [product] launch."  *See* Def Ex. 10 at Priority Key, (GOPRO 008934). Another critical "P0" top priority feature involved the design of the press-thru buttons and provided that, "[a]ll buttons should be designed to prevent accidental presses in pocket, bags backpacks, or from the environmental pressure link being underwater or hit by a wave."  *See* Def Ex. 10 at ¶ ID 6.6.3 (GOPRO 008947).[3]

These statements are a party admission of GoPro, and evidence that GoPro's camera housings possess storage and transport features.  FRE 801. GoPro has recently withdrawn its lack of foundation (FRE 602) and lack of authentication (FRE 901) objections to these design specifications set forth in Defendant's Exhibit 10.  The relevancy of these statements is plain and along with the points made in our opening brief demonstrate that GoPro's products are camera cases.

**II.    The Merchandise Falls Within An *Eo Nomine* Provision And An *Ejusdem Generis* Analysis Is Unnecessary**

**A.  Resort to *Ejusdem Generis* is Unwarranted**

GoPro discredits our common meaning analysis of the tariff term "camera case"

---

[3] GoPro now claims in this lawsuit that the camera housings' ability to serve as a protective storage and transport device would be a "fugitive use" of the merchandise.  (Pl. Resp. Br. at 4).  Plaintiff's argument is undermined by its admission in GoPro's product specification that the housings' designed ability to withstand the rigors of transportation and storage in a bag with other abrasive objects was a "P0" top priority critical function of the product, the lack of which would have stopped the launch of this product.  *See* Def Ex. 10 at Intro, (GOPRO 008934), ¶ ID 7.3.5, ¶ ID 7.4.1 and ¶ ID 7.5.1 (GOPRO 008957-008958).

in stating that the "government urges the Court to determine that a camera case is
anything that covers a camera without any evaluation of the four essential characteristics
unifying the named exemplars in heading 4202, HTSUS as determined by the Federal
Circuit." Pl. Resp. Br. at 11. In other words, GoPro faults us for not engaging in an
*ejusdem generis* analysis or stating that a camera case must exhibit all the unifying
characteristics used to classify merchandise as "similar containers" of heading 4202.
GoPro misconstrues our analysis and is simply incorrect in its legal interpretation.

The interaction of the *ejusdem generis* analysis with an *eo nomine* analysis was
explained in the Federal Circuit decision in *Deckers v. United States*, 752 F.3d 949 (Fed.
Cir. 2014). The Court in *Deckers* stated ". . . while an *ejusdem generis* analysis may not
be necessary if the common meaning of an *eo nomine* term is apparent, when an *ejusdem
generis* analysis has occurred and we have concluded that Congressional intent can be
gleaned therefrom, we may not later ignore that conclusion[]" because ". . . an *ejusdem
generis* analysis informs the scope and common meaning of each of the listed exemplars
in an HTSUS subheading, which is the same goal of an *eo nomine* inquiry." *Id.* at 958.[4]

Here, the common meaning of the term "camera case" is apparent, and
classification of the goods at issue within heading 4202 would not be inconsistent with

---

[4]  The issue in *Deckers* was not one of classification, but pertained to the applicability of
*stare decisis* to bar the importer's claim. *Compare Deckers Corp. v. United States*, 532
F.3d 1312 (Fed. Cir. 2008) ("*Deckers I*") with *Deckers Corp. v. United States*, 752 F.3d
949 (Fed. Cir. 2014) ("*Deckers II*"). The Federal Circuit in *Deckers II* concluded that,
for purposes of *stare decisis*, an *ejusdem generis* analysis of a tariff classification
subheading addresses the same legal issue as an *eo nomine* analysis of a listed exemplar
within that same subheading—namely, the construction of subheading 6404.11. *See* 752
F.3d at 956-59. Accordingly, that case does not stand for the proposition that an *ejusdem
generis* analysis should be performed in classifying merchandise *eo nomine*, but rather
that the characteristics developed in a previous *ejusdem generis* analysis will correspond
to features of named exemplars.

the heading's exemplars; so there is no need to resort to an *ejusdem generis* analysis. GoPro ignores the *eo nomine* reference to "camera cases" and instead adopts an analysis used for articles that are captured by the term "similar containers."  Again, there is no need to engage in a "similar containers" evaluation when we are presented with a specific reference to "camera cases."  Thus, GoPro is incorrect when it asserts that "[t]o be an *eo nomine* "camera case" listed in heading 4202. . ., the Camera Housing must also store, organize, transport, and protect."  Pl. Resp. Br. at 13.  GoPro's understanding ignores both the teaching of *Deckers* as to when an *ejusdem generis* analysis may be necessary (which is not the situation here), and that of *Otter Products, LLC v. United States*, 834 F.3d 1369, 1378 (Fed. Cir. 2016) where the Court stated, ". . . there is no requirement that the subject merchandise meet all four characteristics to qualify as a 'similar container' under Heading 4202."  A product classified within heading 4202, as a named exemplar or a similar container, therefore, is not bound to meet every feature of store, organize, transport, and protect.  This pronouncement in the *Otter Products* decision recognizes that certain exemplars of heading 4202 while not containing all four characteristics, possess enough of the unifying characteristics to be considered part of the exemplar group.  *See e.g. Jewelpak Corp. v. United States*, 297 F.3d 1326 (Fed. Cir. 2002) (upholding the CIT's finding that, a jewelry box suitable for long term use, but containing only one ring (and therefore not demonstrating the organizational characteristic), is classified in heading 4202).  Here, while an *ejusdem generis* analysis and evaluation of each of the factors of store, organize, transport, and protect are unnecessary, they serve to confirm that the camera housings at issue, under an *eo nomine* analysis, fall within heading 4202.

GoPro cannot dispute that its camera housings possess some of the unifying criteria of heading 4202. *See* "Background" and discussion of Def. Ex. 10 above. The definition in the *Focal Encyclopedia* incorporates most of the factors of heading 4202 discussed in the relevant Federal Circuit decisions and is consistent with the heading's exemplars as a whole. Specifically, the *Focal Encyclopedia* definition of "camera case" includes aspects of protection, storage, and transportation (carriage). This makes sense as the unifying characteristics of heading 4202 derive from features exhibited by the named exemplars. Thus, a camera case definitionally, exhibits functions similar to the exemplars of heading 4202. In other words, the attributes of protection and storage necessary to be compatible with the exemplars of heading 4202 informs these attributes.

For example, the traits of protect and store exhibited by a brief case or a school satchel is derived from the articles' function of protecting and storing, among other things, documents that have been removed from a file cabinet or a child's desk drawer and transported and stored temporarily in that case or satchel at a business or school until that document is needed at a meeting or in a classroom. *See, e.g., Rooster Products, Inc. v. United States*, 24 C.I.T. 357, 361, (2000). Similarly, a belt attached tool holder falls under heading 4202 (whether considered to be a holster or a container similar to a tool bag) as it protects and stores tools while being worn by: 1) preventing tools from falling to the ground and 2) by holding the tools while work is performed. *Id.* As the Court stated in *Rooster*, "[j]ust because the user of the tool holder removes the items she needs for the day from a tool bag or some other longer term storage device and later returns them does not place the tool holder outside the scope of the tariff provision at issue." *Id*. In the same way, a camera case protects a camera whether that camera is actively taking a

photo or is in a temporary state of repose awaiting use in the field or being transported to

another filming location.  Accordingly, the characteristics of a camera case as defined by

the *Focal Encyclopedia* are in keeping with the unifying characteristics exhibited by the

other exemplars of heading 4202 including those of holsters, brief cases, and school

satchels and confirm that the camera housings here appropriately fall within heading

4202.

### B.  Even If All Four *Ejusdem Generis* Factors Must Be Met For Classification In Heading 4202, The Housings at Issue Satisfy All Four Factors

Despite judicial precedent to the contrary, GoPro claims all four factors must be

met.  Pl. Resp. Br. at 5-9.  Notwithstanding, we discussed how the subject merchandise

satisfies all four *ejusdem generis* factors in our opening brief.  *See* Cross Motion Br. at

29-38.  We do not repeat our discussion here, but briefly address GoPro's arguments.

As for the storage and transport (carry) factors, GoPro's arguments are ineffective

because the housings are admittedly designed, marketed, and used for "action camera

photography" in which a user may actively film while engaging in extreme activities such

as skydiving, surfing, deep-sea diving, motorcycling, skateboarding, skiing, off-roading,

volcanology, etc.  Pl's SUMF 10.  In other words, if the camera housings at issue can

withstand the rigors of skydiving, volcanology, and skiing, they most certainly can

withstand the rigors of being put inside a bag for storage or transport.

GoPro cites to *Otter Products, LLC v. United States* 834 F.3d. 1369 (Fed. Cir.

2016), for the proposition that a container does not exhibit a storage functionality if the

device contained remains fully functional.  However, the discussion of storage versus

functionality in *Otter Products* involved specific facts regarding specific smartphones

and cases.  Here, *Otter Products* is distinguishable because GoPro, the designer of these

specific camera housings, designed them to address the aspects of storage and transport of the camera contained within them.  *See* Def. Ex. 10.  Further, we explained that the cameras do not retain their full, 100 percent functionality while inside the watertight camera housings.  *See* Cross Motion Br. at 32, 33; Def. Ex. 16, Russell 2021 Dep. 54, 55, 57 and 58.  For these reasons, the camera housings here are different from the cases in *Otter Products* and have a storage functionality.

As noted, protection and carriage are why these housings were designed.  The built in two/three finger mounting system which is dedicated for use with GoPro's assortment of conveyance accessories show that, as imported, the reason these housings exist, among others, are for the protection and carriage of the Hero action camera while it goes into extreme activities to capture great photos.  Here the housings, their built-in mountings and the associated conveyance accessories are marketed as a system.  Pl's SUMF 11 and 24.  Carriage and transport, or protection while carrying or transporting, therefore, is a function of these camera housings.

GoPro admitted that the early Hero action cameras (*e.g.*, Hero 3, Hero 3+, Hero 4) were not waterproof, durable, or mountable by themselves.  GoPro therefore designed the camera housings at issue to provide protection for the camera and the mounting capability necessary for these early Hero action cameras (*e.g.*, Hero 3, Hero 3+, Hero 4) to be used as intended in mobile and extreme/wet environments.  Pl's SUMF 12-14.  Pl. Res. SUMF 1-3, 5-8, 10-12, 14-15, 18-19, 20, 23, 29 and 30.  GoPro also understood that its customers would use the camera housings for, among other things, storage and transport and designed its camera housings specifically to withstand the rigors of such storage and transport activities.  *See e.g.*, Def. Ex. 10 at Intro, (GOPRO 008934), ¶ ID

14

7.3.5, ¶ ID 7.4.1 and ¶ ID 7.5.1 (GOPRO 008957-008958).  GoPro cannot refute these admissions.

GoPro's argument that the housings or lens could possibly get scratched and, therefore, the camera housings do not protect is of no moment.  Pl. Resp. Br. at 7.  That the camera housing may suffer damage while a camera is contained inside does not mean that the housing does not protect.  To the contrary, that the housing experiences damage attests to its protective feature.  As has been admitted, the housings' lenses are in fact hardened to resist damage, but even if it gets scratched – it has protected the camera.  GoPro expressed it best in its design specification when it stated:

> This shows us that housings are not simply "water housings", or "dive housings", they are protective housings. They are used for a wide range of use cases to protect the customer's investment in a GoPro camera. Customers feel assured that the housing offered by GoPro will adequately protect their camera even through the most extreme use cases, and that **even if the housing itself becomes heavily damaged, the camera held within will often emerge in pristine condition.**

*See* Def. Ex. 10 at page GOPRO 008937 (emphasis added).

Lastly, as to the organize factor, GoPro agrees that the camera housings in addition to containing the Hero camera, can also accommodate a BacPac Battery accessory, or a BacPac LCD screen accessory, and anti-fog desiccant strips.  *See* Pl. Resp. Br. at 9.  The ability to carry these additional items is a designed feature of the housings at issue.  Accordingly, the housings meet the criteria of holding more than one item to exhibit the characteristic of organizing.

As noted in our cross-motion brief and above, even if the camera housings at issue were required to meet the four characteristics of heading 4202, which is not required, that standard has been met.

15

III.     **The Explanatory Notes Distinguish Between Camera Cases And Camera Accessory Cases And Supports Classification Of The Imported Goods As *Eo Nomine* Camera Cases**

GoPro argues that our discussion of the Explanatory Notes, and their identification of "camera accessory cases" separately and apart from "camera cases" has no impact in the classification of the goods here.  Pl. Resp. Br. at 13-16.  However, GoPro overlooks that the Explanatory Notes demonstrate that the two products, while distinctive, are classifiable within heading 4202 and show the range of camera-related containers classifiable within the heading.

That the Explanatory Notes recognize two types of cases associated with camera gear, one being a camera accessory case and the other being a camera case of heading 4202, is meaningful in establishing that the goods at issue are recognizable as "camera cases."  The imported cases are form fitted to the Hero camera it encloses, *i.e.*, they are dedicated to protecting the specific cameras they contain.  Pl. Res. SUMF 1-23, 28. Camera accessory cases, on the other hand, are cases capable of carrying an assortment of items, among them lenses, batteries etc.  The CASEY is just such an example of a camera accessory case, with its removable and adjustable velcro partitions and large web pocket, and its ability to hold just about anything.  Nothing about the CASEY shows that it is dedicated for use with a camera or any specific camera for that matter.  *See* Pl. Ex. A6 (demonstrative exhibit named "CASEY Camera Case).  Camera cases, such as the goods at issue, being an *eo nomine* exemplar of heading 4202, need only show that they are in harmony overall with the exemplars of heading 4202.  Camera accessory cases, being a "similar container" to the *eo nomine* cases of 4202, must meet a number of the unifying characteristics of heading 4202 under an *ejusdem generis* analysis.  *Otter Products,* 834

16

F.3d at 1378.

Accordingly, the difference between camera cases and camera accessory cases further demonstrates that the camera housings here correctly fall within heading 4202 as "camera cases."

**IV.    GoPro and Other Retailers and Manufacturers Have Referred To Camera "Housings" and Camera "Cases" Interchangeably**

That GoPro calls its products camera housings rather than camera cases does not preclude their classification as "camera cases" of heading 4202.  In our opening brief at pages 22, 23, we set forth that the terms "housing" and "case" are synonymous insofar as they are used to refer to the category of camera-related products at issue.  GoPro takes issue with this observation and argues that its housings cannot be considered camera cases.  Pl. Resp. Br. at 18-20.   Several factors dictate against GoPro's position.

GoPro has used the terms "housing" and "case" interchangeably to describe the category of goods at issue.  Tellingly, during the pendency of this litigation, GoPro changed its e-commerce on-line advertising of a product similar to the housings at issue, *i.e.*, the "HERO 1O & HERO 9 Protective Housing + Waterproof Case," from being identified as both a "housing" and a "case" (Def. Ex. 12), to just a "housing."  *See* Pl's Resp. Br. at 19.  GoPro, however, still identifies the Hero 10 and Hero 9 housings alternatively as a "waterproof case" in other parts of its website visited on December 9, 2022.  *See, e.g.*, https://gopro.com/en/bs/news/gopro-action-camera-protection-tips; https://gopro.com/en/us/news/gopro-fishing-tips-and-tricks; and https://gopro.com/en/us/news/why-gopro-is-the-best-everyday-small-camera.

GoPro claims that the alternative identification of the housing as a "case" was the result of its e-commerce team's unauthorized effort to drive up web traffic from

consumers.  *See* Def. Ex 4, at 38, 57-59, and Pl. Resp. Br. at 19.  GoPro's explanation

does not account for its continued use on its website.  Regardless of whether the

advertisement was unauthorized, it is apparent that GoPro's e-commerce team understood

that consumers would identify the product under both terms.

 Further, when defending itself in a patent infringement suit brought by an

unrelated company, HERO 360, Inc., GoPro itself argued that the term "camera case"

could be used interchangeably when referring to certain other camera housings used in a

specific 360 degree configuration.  *360HEROS, Inc., v. GoPro, Inc.*, Case No. 17-1302-

LPS-CJB, 2019 U.S. Dist. LEXIS 185631 at \*10 and FN4; 2019 WL 10989202 (D. Del.

Oct. 25, 2019).  In a decision defining the "adaptive member" limitation of the patent, the

Court noted that "[a]lthough the adaptive member is described in the claims as being

attachable to a 'photographic camera,' [GoPro] notes that in the patent, the adaptive

member is depicted as 'attached to what is labeled [as] a camera inside a housing.'  Thus,

[GoPro] added 'or a **camera case**' to its proposed construction."  *Id.* (emphasis in the

original, internal citation omitted).

 GoPro also cannot dismiss that other manufacturers and retailers refer to fitted,

hard plastic protective coverings similar to GoPro's camera housings as both a

"waterproof case" for an "action camera" as well as a "housing."  For example, an Akaso

advertisement states that the Akaso product described is a "Waterproof Case Underwater

Housing for AKASO Action Camera."  Def. Ex. 15.  Mr. Russell, GoPro's proposed

expert witness, was questioned about the Akaso advertisement and acknowledged that

Akaso uses both "waterproof case" and "housing" interchangeably in the advertisement

to describe their waterproof camera housing product.  Def. Ex 4, at 69-71.

To counter, GoPro relies on an apparent distinction made by the *Focal Encyclopedia* between "underwater housings" and "camera cases" to emphasize its point that "housings" and "cases" are different. *See* Pl. Resp. Br. at 11. Significantly, GoPro's point falls flat as its cite to the *Focal Encyclopedia* was to the definition of "underwater camera" and not to the definition of "underwater housing." The *Focal Encyclopedia* does not contain a specific definition for "underwater housing" nor does the brief discussion of the "housing" in the "underwater camera" entry make any pronouncement that such underwater housing would not also be considered a form of "camera case." *See* Pl. Ex. P, at 86.

To the extent that GoPro attempts to distinguish "waterproof housings" from "camera cases" because a waterproof housing "allows for operation of the conventional camera while under water", Pl. Resp. Br. at 11, the *Focal Encyclopedia* includes examples of camera cases which allow active photography while in the "camera case." Specifically, we have discussed the 35 mm case that permits the camera to be actively used, *i.e.,* take pictures while in the case. Cross Motion Br. at 21 (citing the *Focal Encyclopedia*). These traditional 35mm camera cases are like the GoPro camera housings at issue, as both are designed to securely fit and protect the camera while permitting the photographer to take photographs in the field. Further, aerial camera cases, *i.e.* cases attached to an aircraft which permit photography while the plane is in flight are identified in the second paragraph of the *Focal Encyclopedia*'s entry for camera cases as "[c]ases for aerial cameras". Pltf's Ex. P. As discussed above, there is no evidence that the "industry" would not consider camera housings which enclose and protect a camera to be a form of camera case or that camera cases cannot permit

19

photography while in the case.

In sum, as noted above, the undisputed facts show that camera housings and camera cases are indistinguishable. To the extent that GoPro singles out waterproof housings as different, they too fit the *Focal Encyclopedia* definition of camera case as "a container" that provides "protection" for the camera while it is "being stored, transported, and used, especially in the field."[5]

### V. The Court Should Disregard GoPro's Expert And Evidentiary Objections

### A. GoPro's Employee Expert Is Unnecessary For The Relevant Common Meaning Analysis

This case involves the common meaning of the exemplar "camera cases" of heading 4202. As previously explained, the Court may "rely upon its own understanding of the terms used" or consult lexicographic or other reliable sources to define a tariff term such as "camera cases." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). In this case, the definition of "camera cases" is plain and, moreover, the parties agree that the definition is set forth in the *Focal Encyclopedia*. There is no need to resort to any additional sources of information, and the discussion involving an expert's opinion is irrelevant.

For GoPro to deviate from the definition of camera cases and establish a meaning different from the common meaning, it would have to prove a commercial meaning that is definite, uniform, and general throughout the trade. *See Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed. Cir. 1984). GoPro, however, claims it is not seeking to

---

[5] That the *Focal Encyclopedia* definition of camera cases relies on some of the same unifying factors of heading 4202 products, *i.e*, protection, storage and transportation (carriage), further supports classification under this heading.

establish a commercial meaning different than the common meaning.  *See* Pl. Resp. Br. at

17.  Nonetheless, GoPro claims that the common meaning of camera cases pursuant to

the *Focal Encyclopedia* comprise cases that are used principally for storage, transport,

protection, and organization.  As noted in our discussion above, the *Focal Encyclopedia*,

provides that a "camera case" comprises "a container" that provides "protection" for the

camera while it is "being stored, transported, and used, especially in the field."  *See Focal*

*Encyclopedia* at 90 (Pltf's Ex. P).

The *Focal Encyclopedia* definition does not require organization as a requirement

of a "camera case."  This is clear from the first line of the *Focal Encyclopedia*'s

discussion of camera cases which states, "[a] container for storage and transport of a

camera, sometimes with associated equipment."  Pltf's Ex. P.  The word "sometimes" in

the sentence, allows for the corollary *i.e.* the storage and transport of just a camera.  If

organization requires more than one item, then the *Focal Encyclopedia* does not require

organization as a requisite to be a camera case.  This understanding of the *Focal*

*Encyclopedia* definition of camera case is supported by its example of the 35mm leather

or plastic camera case, which are retained in the case by means of a screw and has a

"snout" on the front flap to cover the protrusion of the camera's lens.  Pltf's Ex. P.  This

single camera 35 mm case discussed in the *Focal Encyclopedia*, while not demonstrating

an organizational function, is clearly a "camera case."  Thus, there is no support for

GoPro's reading of the criteria of camera cases in the *Focal Encyclopedia.*

To the extent GoPro is attempting to rely on its expert's definition which parrots

the Federal Circuit's four unifying characteristics for heading 4202, to establish a

commercial meaning different from the common meaning, such reliance is misguided.

21

GoPro's "expert" definition provides no evidence that the definition is definite, uniform, and general throughout the trade in the United States.  Further the exact wording of his definition, *i.e.* organization, storage, protect and carry, did not arise from his "expert" experience in the trade but instead, was conceded to have been adopted after being questioned about those terms as a fact witness in this case during 2021.[6]  Def. Ex. 4 at pp 39-43.  Accordingly, there is no basis for a commercial designation or any deviation from the common meaning of camera cases.

For the reasons stated, plaintiff's expert's definition should be ignored.

**B.  GoPro's Evidentiary Objections are Meritless**

GoPro has objected to a number of our exhibits.  Pl. Resp. Br. at 18-20 and 56(c) submission.  However, GoPro's objections are meritless, and the Court should consider the evidence.  Specifically, GoPro objects to Defendant's Exhibits 5, 9-10. 11A-C, 12-15, 21-27 and the photo in our cross-motion brief at page 22 as irrelevant, among other objections.  Under Federal Rule of Evidence, Rule 401, evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b) the fact is of consequence in determining the action.

Under FRE 401 each of the exhibits are relevant.  We respond to plaintiff's objections as follows:

- Exhibit 5 (GoPro "The Handler" physical exhibit) is relevant as it is one of the many conveyance devices that are designed by GoPro to mate (attach) with the two/three fingered mounting device built into the housings as issue.  It shows that

---

[6] Subsequent to Mr. Russell being deposed as one of GoPro's 30(b)(6) witnesses (2021 Transcript, Def. Ex. 16), GoPro utilized him as their proposed expert and was thereafter deposed in this capacity in 2022 (2022 Transcript, Def. Ex. 4).

GoPro designed the housings with the two/three fingered mounts as a system to mate with conveyance devices, allowing the user to bring the camera along with the action to capture footage allowing carriage or transport.

- Exhibit 9 (Bingin (Standard Housing) Marketing Requirement) is relevant as it comprises a GoPro marketing fact sheet which shows among other things, that GoPro built housings that provided ruggedized protection for the Hero 3 camera, including built-in slots for up to three anti-fog inserts, buttons designed to preclude accidental activation when the housing is stored in a bag, *i.e.* showing protection during stowage.

- Exhibit 10 (Cousteau (Super Suit) Product Requirement) is relevant as it comprises a GoPro build requirement for one of the housings at issue and shows that the housings are designed to among other things protect the camera during storage and transport.

- Exhibits 11 a, b, and c, are demonstrative physical exhibits to show the type of a "camera case" discussed in the *Focal Encyclopedia*, as a leather or plastic camera case with a fold down flap, typically for 35 mm cameras.  These are relevant as examples of cameras that can be used while in the case.  Further Exhibits 11 a, b, and c, were bought from E-Bay by undersigned counsel as a lot of vintage camera cases on December 9, 2021.  These physical samples were discussed during the 2022 Russell deposition as Deposition Exhibits 54, 55 and 56.  *See* Def. Ex. 4 at 97-103.  Mr. Russell in response to a question seeking to identify Exhibit 56, stated "[s]imilar to the other exhibits [referring to Exhibits 54 and 55], it appears that this is a vintage rangefinder case to carry a camera in.  Similar to the other

ones, it looks like there's a removable lens covering, as well as enclosure to prevent actuation of shutter and/or controls, and there's a shoulder strap on it." *Id.* at 103. Mr. Russell testified that a "rangefinder" is a "class of camera that has, basically, like, a fixed 35 to 50 millimeter lens. It's kind of what it -- it's kind of a retro-looking camera that is in the early days of what a lot of -- maybe our parents carried around in terms of -- in terms of cameras. . ." *Id.* at 64. Based upon the shape of Exhibits 54, 55 and 56, and the testimony of Mr. Russell, the exhibits were identified and are authentic as demonstrative exhibits. Judicial notice may also be taken that these exhibits are a type of camera case.

- Exhibit 12 and 13 are relevant because they show that GoPro itself has identified similar polycarbonate housings alternatively as "waterproof cases" for Hero 9 & 10 cameras, in other words GoPro has identified these cases for the Hero 9 & 10 cameras as camera cases.

- Exhibit 14 and 15 are relevant because it shows other retailers and manufacturers identify similar housings alternatively as "camera cases." These exhibits are webpages, from a retailer and manufacturer of camera products with web-addresses included. Both web documents were accessed on the internet by undersigned counsel and printed on the dates shown on the pages. *See* Def. Ex. 4 at pages 66 and 70. The exhibits were discussed during the Russell 2022 deposition as deposition Exhibit 51 (*See* Def. Ex. 4 at 66-67) and deposition Exhibit 53 (Def. Ex. 4 at 70-73). Courts generally permit the authentication of web postings, bearing a web address and the date printed, by a witness who saw and printed the postings "for the limited purpose of proving that the postings had

appeared on the world wide web on the days that [the witness] personally saw the postings and printed them off the computer". *SMS Audio, LLC v. Belson*, Case No. 16-81308-CIV, 2017 WL 1533971 (S.D.Fla, Mar. 20, 2017). In fact, no objection regarding authenticity was made for these two documents during the deposition or Mr. Russell as required by USCIT Rule 30 to preserve such objection.

- The photo of Queen Elizabeth on page 22 of our cross-motion brief was accessed and printed by undersigned counsel from the web address given in the caption to the photo during the first week of October 2022 at the time the brief was being finalized. *SMS Audio.*

- Exhibits 21-27 being definitions of tariff terms are relevant.

Accordingly, GoPro's objections to these exhibits are unfounded and the exhibits should be considered by this Court.

The GoPro products at issue are camera cases within the meaning of heading 4202.

## CONCLUSION

For the reasons provided in our cross-motion for summary judgment and for all the above reasons, we respectfully request that this Court deny plaintiff's motion for summary judgment, grant defendant's cross-motion for summary judgment, dismiss this action in its entirety and grant defendant such other and further relief as may be just and appropriate.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

By:    /s/ Aimee Lee
AIMEE LEE
Assistant Director

*Of Counsel*: Mathias Rabinovitch, Esq.       /s/ Edward F. Kenny
Office of Assistant Chief Counsel              EDWARD F. KENNY
International Trade Litigation                 Senior Trial Counsel
U.S. Customs and Border Protection             Civil Division, Dept. of Justice
                                               Commercial Litigation Branch
DATED:  New York, New York                     26 Federal Plaza – Suite 346
        December 9, 2022                       New York, NY 10278
                                               Attorneys for Defendant
                                               Tel. (212) 264-0480

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Edward F. Kenny, an attorney in the Office of the Assistant Attorney General, Civil

Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for

the Government's reply memorandum of law in opposition to plaintiff's motion for summary

judgment and in further support of defendant's cross-motion for summary judgment, dated

December 9, 2022, relying upon the word count feature of the word processing program used to

prepare the memorandum, certify that this memorandum complies with the word count limitation

under the Court's chambers procedures, and contains 6,953 words.

<u>/s/ Edward F. Kenny</u>