Slip Op. 23-130

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **GOPRO, INC.**<br><br>   Plaintiff,<br><br>v.<br><br>**UNITED STATES**<br><br>   Defendant. | Before: Timothy M. Reif, Judge<br><br>Court No. 20-00176 |

## MEMORANDUM AND ORDER

  The following order concerns the challenge by plaintiff GoPro, Inc. ("plaintiff" or "GoPro") of the classification of subject merchandise by U.S. Customs and Border Protection ("Customs") of eight camera housing models under subheading 4202.99.9000 of the Harmonized Tariff Schedule of the United States. The subject merchandise encompasses GoPro's eight models of camera housings ("camera housings") for use with GoPro's HERO 3, HERO 3+, HERO 4 action cameras and HERO 5, 6, 7 Black action cameras ("action cameras").

  Below, the court identifies questions of material fact that are allegedly not in dispute but as to which the opposing party has not admitted. In consideration of oral argument,[1] record evidence and parties' submissions to the court in support of their cross-motions for summary judgment, the parties are ordered to file supplemental

---

[1] Oral argument concerning the cross-motions for summary judgment for classification of the subject merchandise was held on March 15, 2023. Oral Arg., ECF No. 46.

briefing in response to the court's questions concerning potential outstanding material facts in dispute in the parties' U.S. Court of International Trade ("USCIT") Rule 56.3 Statements. *See generally*, Pl.'s Stmt. Facts ("Pl. Stmt. Facts"), ECF No. 29-1; Def.'s Stmt. Facts ("Def. Stmt. Facts"), ECF No. 33; Def.'s Resp. Pl.'s Stmt. Facts ("Def. Resp. Pl. Stmt. Facts"), ECF No. 33; Pl.'s Resp. Def. Stmt. Facts ("Pl. Resp. Def. Stmt. Facts"), ECF No. 37-1; Pl.'s Reply Def.'s Resp. Pl.'s Stmt. Facts ("Pl. Reply Def. Resp. Pl. Stmt. Facts"), ECF No. 37-3.

## BACKGROUND

Plaintiff and defendant filed cross-motions for summary judgment in which each states that there is "no genuine issue as to any material fact." Pl.'s Mot. Summ. J. ("Pl. Br.") at 6, ECF No. 29 (citing USCIT R. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Def.'s Cross-Mot. Summ. J. ("Def. Br.") at 13, ECF No. 33 (citing USCIT R. 56(c);[2] *Celotex,* 477 U.S. at 317, 322 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a).

The court concludes that each party's disputes and denials with respect to the other party's USCIT Rule 56.3 Statement demonstrate that there may be outstanding issues of material facts, despite parties' repeated assertions to the contrary. Pl. Resp. Def. Stmt. Facts at 1 (stating that "[a]lthough Plaintiff objects to some of the Defendant's statements in that they are immaterial or inaccurately reflect the record/the evidence cited, nothing in Defendant's Statement raises a genuine dispute as to any material fact

---

[2] Plaintiff and defendant cite incorrectly to USCIT Rule 56(c) to support the standard for summary judgment. Pl. Br. at 6; Def. Br. at 13. The court directs parties to USCIT Rule 56(a) as the apposite rule for summary judgment. USCIT R. 56(a).

for the purposes of Plaintiff's Motion for Summary Judgment."); Def. Br. at 11. The classification of subject merchandise is a fact-intensive inquiry for the court. *See ADC Telecommunications, Inc. v. United States*, 916 F.3d 1013, 1017 (Fed. Cir. 2019) (describing the two-step inquiry of classification of merchandise: "[the court] ascertain[s] the meaning of the terms within the relevant tariff provision, which is a question of law, and, second, [the court] determine[s] whether the subject merchandise fits within those terms, which is a question of fact.") (citing *Sigma-Tau HealthSci., Inc. v. United States*, 838 F.3d 1272, 1276 (Fed. Cir. 2016)). The two-step inquiry "collapses into a question of law" when there is no genuine dispute as to the nature of the subject merchandise. *LeMans Corp. v. United States*, 660 F.3d 1311, 1315 (Fed. Cir. 2011). In the instant action, the court directs parties to confirm their positions regarding the nature of the subject merchandise to confirm that the action is ripe for summary judgment.

Accordingly, parties are directed to: (A) come to an agreement on each fact noted below that they state is "undisputed" and state clearly the undisputed fact; or (B) state clearly that certain facts are not agreed and are disputed.

The court notes finally that, with respect to each material fact discussed below, the potential dispute raised by each party to the other's Rule 56.3 Statement is not sufficiently precise to understand the dispute as to a material fact or in some cases even whether there is a genuine dispute. In this respect, the parties have not provided the court with sufficient guidance in their respective Rule 56.3 Statements.[3]

---

[3] USCIT Rule 56.3 states in relevant part:

> On any motion for summary judgment filed pursuant to Rule 56, the factual positions described in Rule 56(c)(1)(A) must be annexed to the motion in a separate, short and concise statement, in numbered paragraphs, of the

Under USCIT Rule 56(e)(1), the court may offer parties an opportunity to address facts that appear to remain outstanding on summary judgment. USCIT R. 56(e)(1) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may give an opportunity to properly support or address the fact"). Accordingly, the court directs parties to answer in a short and concise manner Questions 1, 2 and 3 below. For ease of reference, the court directs parties to their initial submissions, responses and replies thereto to highlight the potentially disputed fact before the court.

**I.      Questions for parties concerning factual issues**

**Question 1: Do the camera housings feature lens coverings that obstruct or inhibit use of the action camera as a camera when enclosed within the camera housings?**

In its Rule 56.3 Statement, plaintiff states that the camera housings do not feature a protective lens covering, a fact that the government denies in its response and contradicts in its own Rule 56.3 Statement for its cross-motion for summary judgment:

> 29. The Camera Housings do not feature a protective lens covering for storage or transport of the action camera.[4]
>
> Government's Response: *Denies. See P-18 which states "The Camera Housings consist of a ridged plastic water- sealed shell made out of the polycarbonate, with hardened flat glass over the lens assembly." The hardened flat glass is part of the protective container which protects the Hero Action Camera's lens. Avers that GoPro also offers lens covers for the Standard housing based models and Dive Housing which not only*

---

material facts as to which the moving party contends there is no genuine issue to be tried.

USCIT R. 56.3(a).

[4] For purposes of this discussion, citations to the relevant paragraph number are included and parties' internal citations to record evidence have been omitted throughout.

> *cover the housing lens but also obstructs the housings "pass-thru" "on" button, precluding any accidental activations during storage or transport.*
>
> **NO GENUINE DISPUTE** – Plaintiff's factual proposition that the Camera Housings do not feature a protective lens cover for storage and transport of action camera is uncontroverted. The government's averred facts do nothing to controvert this factual assertion. With respect to lens cover, the government ignores record evidence that Lens Cover is an optional standalone accessory for one model of camera housing. Offered precisely because that housing' lens assembly can be damaged in transport. It did not ship with the products at issue in this lawsuit.

Pl. Reply Def. Resp. Pl. Stmt. Facts at ¶ 29.[5]

**Question 2: Is the action camera functional as a camera (photography and videography purposes) while within the camera housing?**

Plaintiff and defendant, respectively, use the terms "fully functional" and "retain[s] 100% functionality" and then disagree on what it means for the action camera to be "fully functional" or to "retain 100% functionality" inside the camera housings. The question to which the court seeks an answer is whether the camera is "functional as a camera (photography and videography purposes) while within the camera housing":

> 32. The GoPro HERO action camera remains fully functional while housed inside the Camera Housing, so that it may be used while inside the housing.
>
> Government's Response: *Denies. The Hero Action cameras do not retain 100% functionality when inserted into the GoPro waterproof housings. The Hero Action cameras without the housings have capabilities of great image quality and great audio quality. When the Hero Action cameras are inserted in the GoPro waterproof housings, the audio quality is degraded*

---

[5] Defendant submitted a separate Rule 56.3 Statement to support its cross-motion for summary judgment, which features a directly contradictory fact, controverted by plaintiff in its response thereto:

> 36. The GoPro Housings have covers which both cover the lens and the power button on the housings which have the power button and lens on the front of the housings, *i.e.*, the Dive Housing, Wrist Housing, Camo Housing, Standard Housing and Skeleton Housing.

Pl. Resp. Def. Stmt. Facts at ¶ 36.

> and muffled. Improved audio quality is one of the reasons GoPro came up with the Skeleton Housing, which is the only housing at issue which is not waterproof mainly because it has ports (holes) and cut-outs in the sides and back of the housing. Further, when a Hero camera is placed inside the tight-fitting GoPro housing, the camera heats up when operating as it is fairly power hungry. While a heat sink on the camera housing helps dissipate heat buildup, the camera sealed inside the waterproof housing can overheat under certain conditions resulting in a shutdown. Additionally, once the Hero Action camera is enclosed in a GoPro waterproof housing there is no access to the camera's HDMI and microphone ports, which are preferable for media or TV and movie production.  For these reasons the Hero action camera does not retain 100% functionality when enclosed in the GoPro Waterproof Housings.
>
> **NO GENUINE DISPUTE** – The government factual assertion that the GoPro action camera is not fully functional when enclosed in the GoPro waterproof housing misstates record evidence. The cited evidence does not support the fact that the audio performance is "degraded" and does not deliver acceptable performance when the action camera is enclosed in the waterproof housing during intended extreme activities. The record evidence shows that the Skeleton housing is only recommended where IMPROVED audio is desirable, i.e., professional media applications where access to the HDMI/Mic ports is preferred. The cited evidence also does not support the asserted fact that the camera is susceptible to overheating while enclosed in the housing any more than any other consumer electronic device (i.e., cell phone or laptop) under the direct sunlight and no airflow. The government does not (and cannot) dispute that the GoPro action camera is fully functional when enclosed in the Camera Housings at issue in this litigation during filming in active environments as intendeds – it is waterproof, shockproof, mountable, captures great video and acceptable audio.

Pl. Reply Def. Resp. Pl. Stmt. Facts at ¶ 32.

**Question 3(a): Are the spring buttons[6] on the camera housing designed to resist, to some degree, pressure so as to minimize accidental turning on or off of the camera?**

---

[6] In their Rule 56.3 Statements and briefs, parties refer interchangeably to the buttons on the camera housings as "spring-loaded buttons," "press-thru" buttons, "pass-through button plungers" and "exposed functional button assemblies."  Pl. Resp. Br. at 5; Def. Stmt. Facts ¶¶ 35, 11.  The court uses the term "spring buttons" to refer to the feature on the camera housings to which parties refer as the buttons on the camera housings that correspond to the power and functional buttons on the action cameras.

**Question 3(b): Do the spring buttons on the camera housing correspond to the buttons on the action camera both to enable the user to turn the camera on while it is in the housing and to provide some degree of protection to the camera?**

**Question 3(c): Are the parties in agreement with the following statement: if the camera housings were to be used as the primary storage solution for the action camera, the spring buttons could be fouled by dirt and grime?**

Plaintiff and defendant dispute the degree to which the buttons on the camera housings are affected by the environment in which they are used:

> 35.  The resistance of the springs of the housing's "press-thru" buttons which control some of the camera's functions were tested to ensure the buttons were capable of "resist[ing] accidental presses".
>
> Plaintiff disputes this assertion as stated with respect to the characterization [sic] the product and marketing requirements regarding resistance of the housing's buttons. . . .  Regardless, the asserted fact is immaterial.  It is undisputed that "If the Camera Housing were to be used as the primary storage solution, the user would risk scratching the lens assembly and the action camera could be rendered unusable.  Also, the entire camera optical system is subject to damage if dropped on the lens glass while in the housing.  Similarly, if the Camera Housing were to be used as the primary storage solution, the exposed functional button assemblies could be fouled by dirt and grime and, if bumped, the buttons could inadvertently power the camera on, or actuate the shutter, consuming the battery and valuable microSD memory card storage space.  To the contrary, camera cases are specifically designed to protect both cameras and lenses alike from all of the above."

Pl. Resp. Def. Stmt. Facts ¶ 35 (quoting Pl. Stmt. Facts ¶ 38).[7]

Both parties' responses and replies to the respective opposing party's statements of fact in the quoted excerpts above from party submissions are

---

[7] Plaintiff cites to its own Rule 56.3 Statement of Facts, claiming that the fact is "undisputed."  Pl. Reply Def. Resp. Pl. Stmt. Facts ¶ 38.  The court notes that plaintiff's characterization that this fact is "undisputed" is inaccurate: defendant denies this fact in its response to plaintiff's statement, stating, "denies that the buttons would likely be fouled by dirt and grime."  Def. Resp. Pl. Stmt. Facts ¶ 38.

referenced along with the court's questions to provide guidance to parties so that they may avoid repeating themselves in their answers.

## CONCLUSION

In the absence of adequate guidance through Rule 56.3 Statements and contradictory assertions from both parties therein, the court directs parties to address through their answers to the foregoing questions whether there are any outstanding material facts in dispute or whether the instant action is ripe for summary judgment.

Accordingly, it is hereby

**ORDERED** that each party file within 30 days of this order a responsive supplemental USCIT Rule 56.3 Statement in response to the court's questions.

**ORDERED** that each supplemental responsive statement is limited to 200 words per question for each party.

**SO ORDERED.**

/s/      Timothy M. Reif
Judge

Dated: September 11, 2023
      New York, New York